# Western Union Telegraph Co. v. Benson.

*Damages for Failure to Promptly Deliver Telegram.*

(Decided Dec. 17, 1908. Rehearing denied Feb. 5, 1909.
48 South. 712.)

1. *Telegraphs and Telephones; Operator as Agent of Sender.*—If a telegraph operator writes a message on one of the company's blanks, at the request of the sender, he becomes the sender's agent in the writing of the telegram binding the sender by the terms of the contract.

2. *Same; Delayed Message; Burden of Proof.*—Where the sender of a telegram imparted no information as to whether the sendee lived within or without the free delivery limit of the terminal office and paid no extra toll to secure delivery out of such limit and the sending operator had no information as to residence of the sendee, the duty is on the sender of the message, in an action for failure to promptly deliver the message, to show whether the addressee lived within the free delivery limits of the terminal office.

3. *Same; Instructions.*—Where there was an issue as to whether the company had exercised reasonable diligence within the free delivery limit to make a delivery of a telegram a charge asserting that the company's duty to make free delivery was conditioned on the addressee's residence within the free delivery limit, and that until that condition was shown the company was not in default, under the pleading and evidence, was properly refused.

. 4. *Same.*—A charge asserting that unless the addressee lived within the free delivery limits of the terminal office, the sender could not recover, tended to mislead the jury to believe that if the sender

[Western Union Telegraph Co. v. Benson.]

fails to show the location of the addressee's residence within the free delivery limit, he could not recover although the company did not exercise reasonable diligence in an effort to make the delivery within such limit.

5. *Same; Damages for Mental Anguish.*—Where a telegraph company negligently failed to deliver a message by one brother to another announcing the death of a third brother, the sender may recover damages for mental anguish.

6. *Same; Death Message; Notice of Relationship; Mental Anguish.*—Where the telegram announces a death and directs the sendee to come at once, the company is charged with notice of relationship between the parties, the consequence of a possible failure to deliver according to the terms of the contract, and that mental pain and anguish will probably result, where the sendee and decedent's surname are identical.

7. *Same; Damages Recoverable.*—Where the sender of a message, addressed to the sendee, announces the death of a brother of both, and summons the addressee to come at once, suffers mental pain from being deprived of the presence of the addressee before and during the burial of the brother as a proximate consequence of the failure of the company to promptly deliver the message, such pain is an element of damage recoverable by the sender; however, the mental anguish naturally arising from the death should not be confounded by the jury with that resulting from the company's negligence.

8. *Same; Mental Anguish; Evidence.*—It is not necessary that there be positive or direct evidence of mental pain such as expressions or exclamations indicating such suffering, to authorize a recovery for mental anguish caused by the company's negligent delay in the delivery of the death message; the jury may infer the same from an application of their own knowledge of human nature and their experience from the attendant facts and circumstances.

9. *Same; Jury Question.*—Even though there is evidence of mental suffering caused by negligent delay in the delivery of a death message, the question as to whether it existed is one to be left to the jury as a basis for damages.

10 .*Same; Free Delivery Limits.*—Although the usual route in going from the telegraph office to the residence of the sendee was more than half a mile, yet if the residence of the sendee was within the half mile radius from the terminal office, which half mile radius constituted the free delivery limit of that office, the sendee was entitled to free delivery.

11. *Same; Delayed Message; Punitive Damages.*—For a breach of contract to promptly deliver a message, exemplary or punitive damages are not recoverable from a telegraph company.

12. *Same; Damages; Instruction.*—A charge asserting that if the defendant telegraph company's conduct in failing to deliver a message was such as to be wholly in disregard of the sender's right, the jury could consider that in assessing damages, authorized the recovery of exemplary or punitive damages, and should not have been given.

13. *Same; Evidence.*—Where the complaint charged that the addressee would have attended the funeral if the telegram had been

promptly delivered, it was competent for the addressee to testify that he could have make connections with the train and would have gone to the funeral if he had received the message earlier.

14. *Same.*—In an action for failure to deliver a telegram promptly it was competent to show by the witness that witness asked the company's agent, who was looking for the sendee, whether the message was important or not; that the agent replied, he did not know whether it was; that witness told the agent he would deliver it; that the agent took the message away and that the witness told the agent where he could find the addressee.

15. *Charge of Court; Argumentative Instructions.*—A charge asserting that the jury should consider the fact that plaintiff was one of six living brothers and that five of them and all four of the sisters were at the burial, in determining whether plaintiff suffered great mental pain as the result of the absence of the sixth brother, was argumentative and properly refused. (The action being for damages for delay in deliverying the telegram.)

16. *Same.*—A charge asserting that in permitting a recovery for mental suffering the law did not authorize the jury to guess at the amount, but requires them to consider very carefully the evidence and decide first whether plaintiff suffered any real mental anguish, and if the suffering was trifling, and such as men of ordinary manhood and self reliance would overlook, and ignore, substantial damages could not be awarded, is purely argumentative.

17. *Same.*—Charges asserting that in determining whether damages should be awarded for mental suffering, the jury must consider all the circumstances and recall all other aid and assistance plaintiff had at the funeral; that if as reasonable men the jury concluded that the plaintiff did not suffer any mental pain, they would violate their oaths by awarding damages greater than the toll paid, etc., are each argumentative and properly refused.

18. *Same; Confusing Instructions.*—A charge asserting that the allowance of damages for mental pain or anguish should be considered by the jury only after mature and careful deliberation, and that none could be awarded unless all the jurors agree that plaintiff actually suffered mental pain because the addressee was not at the funeral, and that the proper amount to be allowed the sender for such mental pain must be agreed on by all the jurors, and that if they were unable to agree on the amount to be allowed, they could award only nominal damages, is involved and confusing.

19. *Same.*—A charge asserting that the burden was on defendant to show when and where the message might have been delivered reasonably, and "your minds are left confused and uncertain as to whether ordinary and reasonably diligence would have succeeded in finding him, then your verdict must be for defendant," assumes that the jurors minds were confused and uncertain and was properly refused for that reason.

20. *Same; Unintelligible Instructions.*—A charge asserting that the burden was not on the company, but on the plaintiff "before you how" sendee might have been found within the free delivery limit, etc., is properly refused as uncertain and unintelligible.

21. *Same; Assumption of Fact.*—A charge assuming facts not shown undisputedly by the evidence is properly refused.

22. *Same; Undue Prominence to Evidence.*—A charge asserting that if the jury believed the testimony of a particular witness, they must find certain things to be true, is properly refused as giving undue prominence to certain evidence and ignoring others.

23. *Same; Province of Jury.*—An instruction that directs the finding of certain facts on the belief of certain evidence is invasive of the province of the jury.

24. *Same; Unsupported by Pleading.*—Instructions are properly refused which charge upon issues raised by pleas to which demurrers have been sustained.

25. *Trial; Argument of Counsel; Reading From Reports.*—In the presentation of the law of the case to the court counsel may read the report of facts from another case in connection with the opinion in the case.

26. *Appeal and Error; Insistence on Assignment; Sufficiency.*—Statements in briefs that a specified instruction refused was correct on the effect of the evidence and could not be disputed; that specified instructions assert correct proposition of law and should have been given and that other specified instructions were supported by the evidence and should have been given, are not sufficient as insistent on such assignment to require their consideration by the Supreme Court.

27. *Evidence; Res Gestae.*—Where the sendee was blind and the message was read to him by the agent of the company before giving it to him, it was competent, as part of the res gestae of the delivery to show what the agent read to the addressee as the telegram.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Action by J. R. Benson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The pleadings and the facts are sufficiently stated in the opinion of the court.

The following charges were requested by, and refused to, defendant:

"(3) I charge you that you cannot find a verdict for plaintiff if you believe plaintiff's evidence, and if you believe further that Bill Benson did not live within the free delivery limits of defendant's Carbon Hill office."

"(15) I charge you that the burden rests upon plaintiff to prove to you reasonable satisfaction that Bill Bencon did not live over one-half of a mile from the tele-

graph office, and that unless you believe from the evidence that he lived within that distance you must find a verdict for the defendant.

"(16) I charge you that plaintiff's only evidence with reference to the distance from Bill Benson's house near Carbon Hill to the telegraph office in Carbon Hill is substantially set forth in the statement of Bill Benson to the effect that he lived somewhere between a quarter and a half mile, near a half a mile, from the depot, and that with this you are to weigh the tetimony of all the other witnesses on that point, and from all the testimony determine the question of distance; and I charge you that unless you are reasonably satisfied that Bill Benson lived within the half-mile limit, then plaintiff has failed to meet the burden resting upon him."

"(19) I charge you that the burden of proof as to whether Bill Benson lived within the free delivery limit rests up plaintiff."

"(23) I charge you that free delivery is a conditional obligation on part of the defendant, contingent upon Bill Benson's residence being within the area of free delivery, and until that condition is shown the telegraph company is not in default under the pleadings and evidence in this cause."

"(28) I charge you that you cannot assume that plaintiff suffered pain on account of his brother's absence merely because his brother was not present at the funeral."

"(30) I charge you that the fact that plaintiff was one of six living brothers, and that five of the brothers and all four of the sisters were present at the burial, may be considered by you in determining whether or not this plaintiff suffered great mental pain at the absence of the six brothers."

[Western Union Telegraph Co. v. Benson.]

"(32) I charge you, gentlemen of the jury, that in allowing a recovery in certain instances for mental suffering the law does not authorize you to guess at the amount but does require you to consider very carefully the evidence, and decide first of all whether or not plaintiff suffered any real mental anguish, and if this suffering was trifling, and such as men of ordinary manhood and selfreliance would overlook or ignore, then you would be prohibited from awarding any substantial damages for the alleged mental suffering.

"(33) I charge you that the allowance of damages for mental pain or anguish is not to be considered by you, except after mature and careful deliberation, and you cannot award any such damages unless all of you shall agree that plaintiff actually suffered from mental pain because Bill Benson was not at the scene of the funeral as alleged, and the proper amount to be allowed plaintiff for such mental pain must be agreed upon by all of you, and if you are unable to agree on the question as to what amount should be allowed plaintiff, if anything at all, you cannot award anything but nominal damages.

"(34) I charge you that in deliberating upon the question as to whether you will award any damages at all to plaintiff for mental suffering you must consider all the circumstances and recall what other aid and assistance plaintiff had at the funeral, and if, as reasonable men, you conclude that plaintiff did not suffer any mental pain himself, you would be violating your oath if you awarded him any damages greater than 25 cents, the sum he paid for the message."

"(37) There is no presumption whatever that plaintiff suffered mental pain simply because his brother was not present at George Benson's funeral.

"(38) I charge you that there is no evidence in this case that plaintiff suffered any mental pain on account

of the absence of his brother Bill Benson from the funeral.

"(39) I charge you that, before you can award any damages whatever to plaintiff for mental pain caused by his brother's absence, you must carefully and with due regard for your solemn oaths consider what aid, comfort, and assistance Bill Benson would have rendered J. R. Benson individually on the day of George Benson's funeral.

"(40) I charge you that you are authorized to consider the fact that there were present four sisters and five brothers at the funeral of George Benson in determining what aid, comfort, society, and assistance Bill Benson could have rendered J. R. Benson, had Bill Benson been present."

"(12) In determining whether or not plaintiff suffered mental pain on account of the absence of Bill Benson, you must conclusively presume that plaintiff is a man of ordinary self-reliance and force of mind, and are not authorized to presume that he is any more emotional than any grown man of ordinary strength and firmness and manhood; and you must solemnly and conscientiously consider these facts before you can arrive at a just verdict."

"(48) I charge you that the burden rests upon plaintiff to show when and where the message in question might reasonably have been delivered to Bill Benson within the free delivery limit of Carbon Hill, and your minds are left confused and uncertain as to whether ordinary and reasonable diligence would have succeeded in finding him then your verdict must be for the defendant.

"(49) I charge you that the burden is not upon the defendant, but upon plaintiff before you how Bill Benson might have been found within the free delivery limits

[Western Union Telegraph Co. v. Benson.]

of Carbon Hill, by a person not knowing him by name, and if your minds are confused and uncertain as to the movements of Bill Benson on July 3d, and as to the probability of being able to find him in the free delivery limits of Carbon Hill, your verdict must be for the defendant."

"(51) I charge you that if you are reasonably satisfied from the evidence that the defendant's messenger, S. D. Patterson, within a reasonable time after Bill Benson came within the free delivery limits of Carbon Hill, Ala., on the morning of July 3, 1907, went to the store of G. L. Wakefield with the message for the purpose of making delivery, and that the said Bill Benson was absent, then your verdict must be for the defendant.

"(52) I charge you that, if you believe the testimony of S. D. Patterson, then you must find that reasonable diligence was used by the defendant to deliver the telegram after Bill Benson came within the free delivery limit of the terminal office, and your verdict must be for the defendant, provided that you further find that the residence of said Bill Benson was more than one-half mile from defendant's office in the town of Carbon Hill.

"(53) I charge you that, in ascertaining the distance from defendant's office in Carbon Hill and the residence of Bill Benson, the route traveled from said office to said residence is to be considered, and not a direct line between said points.

"(54) I charge you that, in determining the distance between defendant's office in Carbon Hill and the residence of Bill Benson, you are to consider the most available route that could have been traveled between said points and not a direct line."

. "(58) I charge you that under the evidence in this case there was no train leaving Carbon Hill after the message was delivered to defendant at Nauvoo, and the

time that said Bill Benson came within the free delivery limits of defendant's office at Carbon Hill, by which said Benson could have come to Jasper, or any other point, and take a train that would have reached Nauvoo in time for him to have gone to George Benson's house before the funeral party left.

"(59) I charge you that, if the evidence is evenly balanced as to whether defendant was, or was not negligent in the delivery of the message, then your verdict must be for the defendant."

"(68) I charge you that the damage ordinarily resulting from the breach of contract to deliver messages of the kind in question do not include mental pain of the sender at being deprived of the addressee's consolation, and in order to entitle the sender to recover such peculiar damages it must be first shown that at the time of the receipt of the mesage for transmission the defendant had notice of the fact that mental pain to the sender would be the natural or probable result of its failure to deliver; and I charge you that the terms of the message in this case are not sufficient prdicate to serve as the basis for the recovery of damages for mental pain caused the sender by being deprived of the addressee's consolation and solace.

"(69) I charge you that, if the evidence should disclose that the defendant did not use reasonable diligence in and about the transmission of the message in question, then Bill Benson, upon showing the necessary facts, might sue and recover damages for any mental pain he may have sustained by reason of his enforced absence from his brother' burial; but the message in this case did not disclose the fact that its purpose was for the purpose of obtaining for the sender the consolation and solace of Bill Benson, and I therefore charge you that no damages can be awarded to plaintiff which may have

been caused him by his brother Bill's absence from the funeral.

"(70) I charge you that before plaintiff is entitled to recover damages for mental pain caused by the absence of his brother Bill, as alleged in the complaint, the evidence must first reasonably satisfy your minds that defendant had notice of the fact that under the circumstances J. R. Benson would suffer such mental pain if his brother Bill did not attend the funeral, and the mere sending of the message in question was not sufficient to give notice to the defendant of that fact.

"(A) I charge you that if you are reasonably satisfied from the evidence that the residence of Bill Benson on July 3, 1906, was more than one-half mile from the office of defendant in Carbon Hill, then defendant has proved its ninth plea, and your verdict must be for defendant."

(B) Same as charge 9, with reference to the tenth plea.

"(24) I charge you that there is no evidence in this case to support the averment in the complaint that plaintiff was caused to suffer great mental pain by reason of defendant's alleged breach of contract.

"(25) I charge you that the mental pain alleged by plaintiff to have been suffered by him is entirely too remote to be made a basis for damages in this case.

"(26) I charge you that you cannot award any damages to plaintiff for alleged mental pain.

"(27) I charge you that mental pain must be proven by evidence, just as any other fact in the case, before you can award damages therefor."

The following charges were given at the request of plaintiff:

"(1) I charge you, gentlemen of the jury, that although you believe that Bill Benson did not live within the free delivery limit in the town of Carbon Hill, Ala.,

yet, if you further believe from the evidence that de-
fendant, by the exercise of due diligence, could have
delivered the telegram to him within the free delivery
limit in time for him to have been present at his brother's
burial, then I charge you plaintiff would be entitled to
recover."

"(4) If you find from the evidence that Bill Benson
had a place of business within the free delivery limits
in the town of Carbon Hill, Ala., then I charge you that
it would be defendant's duty to use due diligence in at-
tempting to deliver said message to him at such place
of business, and if you further believe that the failure
to do so deprived Bill Benson from being at his broth-
er's funeral, then I charge you plaintiff would be enti-
tled to recover.

"(5) If you believe from the evidence that Bill Ben-
son was in the town of Carbon Hill within the free
delivery limits from 8 a. m., to 11:30 a. m., on the day
of July 3d, and by the exercise of due diligence defend-
ant could have delivered the telegram to him in time for
him to have attended his brother's funeral, and failed to
exercise due diligence, then I charge you plaintiff would
have been entitled to recover."

"(10) I charge you, gentlemen, that if you believe
from the evidence that the defendant's conduct in failing
to deliver the message was such as to be wholly in disre-
gard of the plaintiff's right, then I charge you that you
would have a right to consider this on assessment of
damages, if you find from the evidence the plaintiff is
entitled to recover."

The insistence in counsel's brief with respect to char-
ges 58, 59, 60, 71, 73, and 75, referred to in the opinion,
is as follows:

"Charge 58 is a correct charge upon the effect of the
evidence and cannot be disputed.  Charges 59 and 60

[Western Union Telegraph Co. v. Benson.]

assert correct propositions of law and should have been given. Charge 75 is a correct statement of the measure of proof required. Charges 71 and 73 were supported by the evidence and should have been given. Plaintiff's counsel asked the witness Wakefield if he did not ask the defendant's agent, Patterson, if it was an important message, and if he did not reply that he did not know whether it was or not, and if he did not tell the agent he would deliver it, and that the agent took the message and went off with it, and if he did not tell the agent where he could find Benson. The bill of exception shows that this evidence was in rebuttal, and that the same questions had been asked the witness Patterson, defendant's agent, and that he had denied that such was the case."

CAMPBELL & JOHNSON, for appellant. The agent of the company in writing the message upon the company's blank at the request of the sender became the agent of the sender and was bound by the contract.—*W. U. Tel. Co. v. Prevatt,* 43 South. 106. The burden was on the plaintiff to show that the sendee of the message did not reside beyond the free delivery limit.—*Henderson's Case,* 89 Ala. 510. The action is ex contractu, and mental anguish is not presumed but must be shown.—*W. U. Tel. Co. v. Westmoreland,* 44 South. 382; *W. U. Tel. Co. v. Heathcote,* 43 South. 117; *Same v. Merrill,* 144 Ala. 618. Counsel discuss numerous charges but without citation of authority. As to charges 68 and 69, they cite.— *W. U. Tel. Co. v. Ayers,* 131 Ala. 391; *Same v. Luck,* 41 South. W. 469.

W. T. McELROY, J. D. ACUFF, and M. B. McCOLLUM, for appellee. No brief came to the Reporter.

DENSON, J.—This is an action by the sender of a telegraphic message against the defendant, Western Union Telegraph Company, to recover damages for an alleged breach of the contract on its part in not promptly delivering the message. George Benson, a man of family, who was residing about four miles from Nauvoo, in Walker county, Ala., was assassinated on the morning of July 2, 1906, while walking a foot log over the creek about a mile distant from his home. The plaintiff, his brother, was soon informed of the killing, and went immediately from his work, about 2½ miles distant, to where the remains of the deceased were lying on the bank of the creek. He then went to his deceased brother's home, and from there to Nauvoo, to notify a justice of the peace for the purpose of having an inquest held. It was late in the afternoon when the justice left Nauvoo and went to where the remains were. Plaintiff, while at Nauvoo that day, between 5 and 7 o'clock p. m., went to the defendant's telegraph office and had the defendant's operator to write out for him, on one of the company's blanks, a telegram addressed to Bill Benson, at Carbon Hill, in Walker county, Ala., about 8 miles distant from Nauvoo. Plaintiff paid the toll on the message and directed the operator to send it. The message is in this language: "Nauvoo, Ala., 7/2/1906. Bill Benson, Carbon Hill, Ala. George Benson shot and killed. Come at once. [Signed] J. R. Benson."

The complaint, among other things avers that the message was not delivered until about 3 o'clock p. m., July 3, 1906; that if it had been delivered promptly, in accordance with defendant's agreement, Bill Benson would have received same in time to attend the funeral of George Benson, and in time to aid and advise in "planning and executing said funeral." and would have aided and advised in planning said funeral. The complaint

then concludes with the following averments: "Plaintiff avers, further, that he was damaged on account of defendant's said breach of said contract, in that he lost the consideration paid for the sending and delivery of said message, and was deprived of the aid, comfort, society, and assistance of Bill Benson while his brother George was a corpse, before burial, and in the burying of said brother George, and was caused thereby to suffer great mental pain, wherefore he sues."

The telegram was not received by Bill Benson until about 3 o'clock p. m., July 3, 1906. That was a time when and after which there was no train, due to leave Carbon Hill for Nauvoo, that would convey him to Nauvoo in time to attend the funeral and burial. The tendency of the evidence was to show that if he received the message by 1:30 p. m., he could and would have made connection by train and gone to the burial. He could not obtain a private conveyance, so he and his wife set out on foot to attend the funeral, and late in the afternoon met the family returning from the place of burial. Bill Benson then went to the home of the plaintiff and remained with him two or three days. At the house of the deceased, and attending the funeral and burial along with the plaintiff, there were five sisters and four brothers. Bill Benson, who is blind and a minister of the gospel, is the eldest of this family.

The record shows that the issues were joined on the plea of the general issue and special pleas 4 and 5; demurrers having been sustained to pleas 6, 7, 8, 9, and 10. Special pleas 4 and 5 both set up, as a defense, the usual clause of the contract in respect to the free delivery limits of the terminal office, setting it out in hæc verba, and aver that the sender did not pay any extra toll for delivery outside of the free delivery limits, and that defendant's agent used reasonable diligence to make the

delivery of the mesage inside of the limits. The fifth plea contains the additional averments that Bill Benson lived beyond the corporate limits of Carbon Hill, and was not known by name to defendant's agent at Carbon Hill.

The principal controversy of law and of fact, so far as the mere right of recovery was concerned, arose on the issues presented by these pleas. Under the undisputed facts of the case, Shepherd, the defendant's operator at Nauvoo, at plaintiff's request, wrote out the message on one of defendant's blanks. This constituted him plaintiff's agent for writing the telegram, and bound the plaintiff by the terms of the contract.—*Western, etc, Co. v. Prevatt,* 149 Ala. 617, 43 South. 106.

In construing this free delivery clause, on contracts for the transmission of telegraphic messages, this court, through Stone, C. J., said: "When a message is handed in for transmission, the presumption must be and is that the sendee lives within the limits of free delivery, or that the sender takes the risk of delivery unless he makes arrangements for delivery at a greater distance; and handing such message, without explanation, casts no duty on the terminal employe or operator other than to copy the message correctly and deliver it with all convenient speed, if the sendee resides within the free delivery limits."—*Western, etc., Co. v. Henderson,* 89 Ala. 510, 517, 7 South. 419, 18 Am. St. Rep. 148; *Western, etc., Co. v. Merrill,* 144 Ala. 618, 39 South. 121, 113 Am. St. Rep. 66; *Western, etc., Co. v. Whitson,* 145 Ala. 426, 41 South. 405. It was also said in the *Henderson Case* "Free delivery within a half mile is not a restriction of a right, but a qualified privilege granted. It is not an inherent right; for, if it were, in the absence of restriction, it would have no limits.' It was expressly held in that case that the burden of proving the residence of

the sendee to be within the limits was upon the plaintiff. This ruling has been recently reaffirmed in the *Whitson Case,* supra. In the case in judgment, the evidence without conflict showed that the company's established free delivery limits at Carbon Hill were embraced within the radius of a half a mile from the company's office at that place; that the sending agent had no information that the sendee resided outside of the free delivery lim· its (if he did so reside) of the terminal office; that if plaintiff knew it he said nothing about the fact, and paid no extra toll to secure delivery outside the limits. In this state of the proof, and in the light of the author ities cited above, it seems clear that the burden of proof on the issue as to whether the sendee resided within the free delivery limits was upon the plaintiff; and it must follow that the trial court erred in refusing written charge 19, requested by the defendant.

But it does not follow, from the premises, that charge 23, refused to the defendant, should have been given. The pleas on which the cause was tried contained the averment that reasonable diligence was exercised by defendant's agent, to make delivery of the message within the free delivery limits. It was therefore an issuable fact in the cause, and evidence was offered in support of and against it; and in this connection there was evidence tending to show that the sendee had a place of business within the free delivery limits. On these considerations notwithstanding free delivery may be "a conditional obligation on the part of the defendant, contingent upon Bill Benson's residence being within the area of free delivery," it is inapt to say that the defendant, "under the pleadings and evidence in this case," is not in default until that condition is shown.—*Walter v. Alabama, etc., Co.,* 142 Ala. 474, 482, 39 South. 87.

For similar reasons, the court did not err in refusing charges 3 and 15, requested by the defendant.

Charge 16, refused to the defendant, was properly refused, if for no other reason, because it is misleading, in that the jury might have concluded from its language that, if the plaintiff had failed to met the burden rest ing upon him in respect to the residence of Bill Benson, a verdict should follow for defendant, notwithstanding they might also have believed from the evidence that defendant's agent did not exercise reasonable diligence in seeking to make delivery of the message within the free limits.

Under our decisions it cannot be questioned that the relationship of brotherhood (as shown between all the parties concerned in the message) brings this cause within the class of cases where damages are recoverable for the mental pain and anguish consequent upon failure to promptly deliver the message.—*Western, etc., co. v. Ayers,* 131 Ala. 391, 31 South. 78, 90 Am. St. Rep. 92; *Western, etc., Co. v. Crocker,* 135 Ala. 493, 33 South. 45, 59 L. R. A. 398; *Western, etc., Co. v. Haley,* 143 Ala. 593, 39 South. 386.

The message relating, as it did, to death, there accompanied it a "common-sense suggestion that it was of importance," and that the persons concerned (that is, sender and sendee) had in it a serious interest; and the surnames of sender, sendee, and person referred to in the message being the same, we do not doubt that the company was charged with notice of the relationship of the parties; and withal, the message was sufficient to reasonably apprise the defendant of the consequences of a possible failure to deliver it according to the contract, and that mental pain and anguish would probably result.—*Western, etc., Co v. Long,* 148 Ala. 202, 41 South. 965; *Cowan v. Western Union Tel. Co.,* 122 Iowa, 379,

98 N. W. 281, 98 N. W. 281 64 L. R. A. 545, 101 Am. St. Rep. 268; *Western, etc., Co. v. Carter,* 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826; *Western, etc., Co. v. Moore,* 76 Tex. 66, 12 S. W. 949, 18 Am. St. Rep. 25; *Bright v. Western, etc., Co.,* 132 N. C. 317, 43 S. E. 841; *Lyles v. Western, etc., Co.,* 77 S. C. 174, 57 S. E. 725, 12 L. R. A. (N. S.) 534; *Thurman v. Western, etc., Co.,* 105 S. W. 155, 32 Ky. Law Rep. 26, 14 L. R. A. (N. S.) 499, and cases cited in the notes to the text of the opinion. If, then, the plaintiff suffered mental pain, by reason of being deprived of the presence of Bill Benson while the brother "was a corpse, before burial, and in burying said brother," as a proximate consequence of the defendant's negligence, we are of the opinion that such mental pain is an element of recoverable damages.—*Western, etc., Co. v. Henderson,* 89 Ala. 510, 519, 7 South. 419, 18 Am. St. Rep. 148.

In arriving at such damages, the jury should not confound the mental anguish naturally arising from the loss of the deceased brother with that which is claimed to result from the defendant's negligence.—*Hancock v. Western, etc., Co.,* 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 403. That the jury may have a foundation for the assessment of such damages, it is not indispensable that positive or direct evidence of mental pain be produced —such as expressions or exclamations, uttered by the plaintiff, indicative of such suffering—for the jury bring into requisition their own knowledge and experience of human nature, and applying that to the attendant facts and circumstances, estimate damages proceeding from mental anguish.—*Western, etc., Co. v. Adams,* 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; *City Nat. Bank v. Jeffries,* 73 Ala. 183, 193; *Western, etc., Co. v. Crocker,* 135 Ala. 492, 33 South. 45, 59 L. R. A. 398; *Willis v. Western, etc., Co.,* 69 S. C. 531, 48 S.

E. 538, 104 Am. St. Rep. 828, 2 Am. & Eng. Ann. Cases, 82.

This does not conflict with the recent case of *Western, etc., Co. v. Leland,* 156 Ala. 334, 47 South. 62. The facts of that case evolve no evidence, either direct or circumstantial, of mental anguish suffered. Indeed, according to the opinion of the court, the attendant facts and circumstances were not such as to warrant the inference that the mental angush for which damages were claimed was occasioned, or augmented, by the negligence of the defendant—the nondelivery of the message. In other words, the effect of that decision is that where a person's status or circumstances are not changed or affected, by reason of the negligence of the company in not deliver-. ing a message, the jury are not authorized to consider mental pain as an element of recoverable damages; and even where there is evidence of mental suffering, the question as to whether it existed as a basis for damages should be left to the jury.—*O'Neal v. McKinna,* 116 Ala. 607, 620, 22 South. 905.

Looking to the evidence in the case, and upon the foregoing considerations, charges 24, 25, 26, 27, 28, 37, and 38 were properly refused to defendant, each being invasive of the province of the jury.

Charge 30 is argumentative, and, besides, leaves out of consideration other phases of the case.

Charge 32 is argumentative, if not otherwise bad, and was properly refused.

Charge 33 is involved and confusing, and was properly refused.

Refused charges 34, 39, 40, and 42 are argumentative, and were properly refused.

Referring to charges 48 and 49, appellant's counsel in their brief say it has been expressly decided by this court that, "if the minds of the jury are left confused and un-

certain, they should not find for the plaintiff." Coun·
sel neglected to cite the case.   Doubtless they had in
mind *Calhoun v. Hannan,* 87 Ala. 277, 6 South. 291, as
explained in the cases of *A. G. S. R. R. Co. v. Hill,* 93
Ala. 514, 9 South. 722, 30 Am. St. Rep. 65, *Brown v.
Master,* 104 Ala. 451, 464, and *L. & N. R. R. Co. v. Sulli·
van Timber Co.,* 126 Ala. 95, 103, 27 South. 760. With·
out stopping to discuss those cases (*Rowe v. Baber,* 93
Ala. 422, 8 South. 865), but conceding their correctness,
both of the charges in question (48 and 49) were proper·
ly refused in this instance.   Charge 48 assumes that the
minds of the jurors are confused and uncertain, while
charge 49 is confusing and uncertain in its terms.

Charges 51 and 52 were properly refused.   Charge 51
pretermits consideration of one phase of the case, and
of the evidence tending to support it (that the residence
of Bill Benson was within the free delivery limits).   In
other words, the charge assumes that his residence was
outside the limits.   No 52 gives undue prominence to a
part of the evidence, and ignores other parts, and, be-
sides, invades the province of the jury.

The proof shows, without conflict, that the free deliv-
ery limits fixed by the company for its Carbon Hill office
were embraced in a radius of half a mile from the office,
so that all persons residing within the radius are enti-
tled to free delivery privileges; and if Bill Benson's
residence was within that radius, it makes no difference
that the usual route, in going from the office to his resi-
dence, covered more than half a mile.   In this view, char-
ges 53 and 54 were properly refused.

What is said by counsel in brief in respect to charges
58, 59, 60, 71, 73, and 75 fails to reach the dignity of an
insistence upon the grounds of error covering them.—
5 Mayf. Dig. p. 32, § 32.

159—18

What has been said supra in respect to the effect of the verbiage of the message as notice to the defendant condemns charges 68, 69, and 70 in defendant's series of refused charges.

The record shows that demurrers were sustained to the ninth and tenth pleas. They were not in the case. Therefore charges A and B were properly refused to defendant. Besides, what is said of these charges is not an insistence upon the grounds of error covering them. —5 Mayf. Dig. p. 32, § 32.

All that is said by appellant's counsel in respect to the grounds of error which cover charges 1, 4, and 5, given for the plaintiff, is that they ignore the issues made by pleas 9 and 10. It suffices to repeat: The record shows that demurrers were sustained to these pleas, and that issue was not joined thereupon.

If by charge 10, given for the plaintiff, it is meant that exemplary or punitive damages might be assessed (and we fail to see that any other reasonable construction can be placed upon it), the charge asserts an erroneous principle as applied here. The action is ex contractu, and such damages are not recoverable.—*Western, etc., Co. v. Rowell,* 153 Ala. 295, 45 South. 73.

The court, over objection of the defendant, allowed Bill Benson to testify that he would have gone to the burial if he had gotten the telegram in the morning. The complaint avers that Bill Benson would have attended the burial if the telegram had been delivered with proper dispatch; and, it being necessary that such fact be proved, we fail to discern how it could be established otherwise than by the affirmative testimony of the person directly concerned. He was properly allowed to testify. —*Bright v. Western, etc, Co.,* 132 N. C. 326, 43 S. E. 841; *Hancock v. Western, etc., Co.,* 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 403; *Western, etc., Co. v. Heathcoat,*

[Western Union Telegraph Co. v. Benson.]

149 Ala. 623, 43 South. 117. Plaintiff was also properly allowed to prove by Bill Benson that, if he had gotten the message between 8 and 9 o'clock in the morning, he could have made connection on the trains. Authorities supra.

The evidence showed that Bill Benson was blind, and that when he called for the telegram at defendant's office it was read to him by defendant's agent before handed to him. Under these circumstances we think it was competent, as a part of the res gestæ of the delivery, for this witness to testify to what the agent read to him as the telegram. Moreover, the telegram was offered in evidence, and there was no dispute as to its contents.

There is no merit in the exceptions reserved to the testimony of witness Wakefield, in regard to what occurred between him and Patterson (defendant's agent), who was seeking Bill Benson for the purpose of delivering the message. The questions asked were substantially in the language of the predicates.

While it may not be permissible for counsel to read the facts from the report of another case to the jury as a part of his argument to them (*Williams' Case*, 83 Ala. 68, 3 South. 743), it is not a breach of propriety for counsel, in presenting the law of the case to the court, to read the report of the facts of the case in connection with the opinion. This is frequently necessary, to give the court a clear understanding of the law. It may be that the court would have the right to exclude the jury from hearing while the law is being thus discussed, and this, we find, the court finally did in the instant case.

As the case must be reversed for the errors pointed out, we deem it unnecessary to discuss the objections reserved to the argument of counsel to the jury, further than to say that in some respects the argument was extreme, and that counsel should restrain themselves, so as to

keep well within the record and leave no room for valid complaint.

We have not given seriatim consideration to the myriad grounds of error assigned. Time and energy would have failed us, had we attempted it. We have, however, considered the matters of vital importance which have been insisted upon, and feel that the opinion will be a helpful guide on another trial.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.