# Postal Telegraph—C. Co. *v.* Nail.

## *Failure to Deliver Telegram.*

(Decided November 24, 1914.   66 South. 903.)

1. *Telegraphs and Telephones; Death Message; Notice.*—A telegram reading "Baby is dead, come at once," although addressed to a person of a different name from that of the sender, is of itself notice to the telegraph company that mental anguish might result on account of delay or of non-delivery.

2. *Same; Action; Evidence.*—Where the sender of a death message claimed mental anguish because the non-delivery of the message prevented the addressee from coming to the funeral, it was competent to show that the funeral was postponed to give the addressee opportunity to come.

3. *Same.*—Where there was a failure to deliver a death message apprising the addressee of the death of the sender's child, it was not harmful to permit the sender to testify that he had two children.

4. *Same.*—Where a message announcing the death of a child and requesting addressee to come at once was not delivered, the addressee may testify that he could and would have come had he received the message.

5. *Charge of Court; Covered by Those Given.*—The refusal of requested charges covered substantially by requested charges given cannot be made the basis of error.

Appeal from Gadsden City Court.

Heard before Hon. John H. Disque.

Action by E. Nail against the Postal Telegraph-Cable Company, for damages for failure to deliver telegram. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts and pleading sufficiently appear in the opinion. The following charges were refused to defendant:

(1) The jury is not authorized to award damages to plaintiff simply because the funeral of plaintiff's child

was postponed because plaintiff's father-in-law did not arrive.

(2) Plaintiff is not entitled to recover anything on account of any mental pain and anguish suffered by plaintiff on account of the failure of his father-in-law to go to him and family after the sending of the telegraphic message.

(3) If the jury find a verdict for plaintiff, they should only find a verdict for plaintiff for the amount he paid defendant for the transmission of the telegram, with the interest thereon from the date plaintiff paid said amount.

(4) Plaintiff is not entitled to recover anything on account of the fact that he was deprived of the consoling and sustaining influence of the presence of his father-in-law with him before and at the funeral and burial of the infant.

(5) Same as 3.

(6) Same as 2.

HOOD & MURPHREE, for appellant. The telegram failed to disclose any relationship, and was consequently not notice to the company that mental anguish would likely result.—*W. U. T. Co. v. Luck,* 41 S. W. 469. The court erred in permitting the witness to testify that if the telegram had been delivered he would have come. Also in permitting the father to testify that he had two children.—*W. U. T. Co. v. West,* 57 South. 740; *A. C. G. & A. Ry. Co. v. Brady,* 49 South. 357. Counsel discuss other assignments of error, but without citation of authority.

McCORD & DAVIS, for appellee. The *Luck Case* is the only case cited by appellant on the question of notice, and this case is in direct conflict with the established

rule in this state.—*Pos. T. Co. v. Beale,* 48 South. 676; *W. U. T. Co. v. Bennett,* 57 South. 87. No question as to the excessiveness of the verdict was raised in the lower court, and it cannot be presented for the first time on appeal.—*Gilliland v. Dunn & Co.,* 34 South. 250. The relationship was such that mental anguish was a basis for recoverable damages.—*W. U. T. Co. v. Bennett, supra; W. U. T. Co. v. Sanders,* 164 Ala. 234; *W. U. T. Co. v. Croker,* 135 Ala. 496. Counsel discuss other assignments of error, in the light of these authorities, and insist that under them the judgment should be affirmed.

THOMAS, J.—Appellee, Nail (plaintiff below), upon the death at Birmingham of his child, an infant some two months old, delivered to the defendant telegraph company at that point and paid the charges thereon for transmission to Sidney Speak at Gadsden, as sendee, who was the father-in-law of appellee, the following telegram, properly dated, addressed, and signed by appellee as sender, to-wit: "Baby is dead. Come at once." The telegram was duly transmitted by defendant to its office at Gadsden, Ala., and there turned over by defendant to one of its messengers for delivery to said Sidney Speak. The messenger left the office, and shortly thereafter returned with what purported to be the sendee's receipt for the message, but which was in fact a forgery by the messenger, who never delivered the message at all, though it appears, he could easily have done so to the sendee at his address as given in the telegram and within the corporate limits; but, on the contrary, the messenger tore up the telegram, threw it in a ditch, and, after signing Speak's name to the purported receipt for it, returned to the office of defendant company and reported its delivery as stated. If the telegram had been delivered, it appears that Speak could and would have, in response to its

summons, gone immediately to Birmingham, where his presence would naturally have been of comfort and consolation to his daughter, the mother of the child, and to his son-in-law, the plaintiff, who was its father, in their bereavement over its loss.

The plaintiff, not knowing of the nondelivery of the telegram, but assuming that it had been delivered promptly, as it could and should have been, expected the arrival of his father-in-law by Saturday morning at the latest, by which time, if the telegram had been delivered, the latter could have reached Birmingham from Gadsden on any of some seven or eight trains arriving at different hours. In this contemplation, the funeral arrangements were made for the burial of the child on Saturday morning; but, when the father-in-law failed to arrive on any of the trains upon which he was expected, the funeral was delayed until that afternoon in the hope that he would still arrive on another train, that was to and did come in in time therefor. But the father-in-law never came, as a result, it appears, of the failure of defendant to deliver the telegram intrusted to it for that purpose. The father of the child, as the sender of the telegram, brings this suit for such failure, alleging, as proximate damages, the loss of the consolation of the presence of his father-in-law in the hour of bereavement, which plaintiff and his wife would have had but for defendant's said failure to deliver the telegram.

. The principal point in the case was presented by a demurrer to the complaint, which raises the question as to whether or not the telegram was such, in and of itself, as to be sufficient to give the defendant notice, or to put it on inquiry, that there existed such a relationship between the plaintiff, who sent it, and its sendee, and the baby that it announced to be dead, as would apprise defendant, at the time it was sent, that a failure to deliver

it would likely result in damages to the plaintiff of the character now claimed by him—mental pain and anguish. It is not alleged in the complaint, nor even pretended by the plaintiff, that the defendant had any notice of any relationship between either of the parties named, except such, if any, as was contained in and suggested by the telegram itself. This being true, the defendant's counsel insist that the telegram, reading merely, as it did: "Baby is dead. Come at once"—is not sufficient to the end claimed. We quote, as follows, their contention in this particular:

"It [the telegram] does not state whose baby is referred to. There is nothing whatsoever to indicate that E. Nail (the sender, who is plaintiff) bore any relation whatever to the dead. So far as the telegram gave notice, Nail may simply have been a friend, the undertaker, a physician, or a clergyman. Certainly nothing whatever to indicate that any suffering in the shape of loss of consolation would result to Nail from a failure to deliver the telegram and from a failure of the person addressed (Sidney Speak) to come as requested in the telegram. If the telegram had read 'my baby,' or if the agent of the defendant company had had knowledge of the relation, or if the surnames of the sender and sendee had been the same, the case might be said to fall within the rule announced in one or other of the cases referred to herein; but there was absolutely nothing to indicate any relationship whatever [citing as authority and comparing the case of *Western Union Tel. Co. v. Luck*, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869, decided by the Supreme Court of Texas]. It is a fair and wholesome rule that, before damages for mental pain can be recovered in cases of this kind, the defendant should have notice that such pain would likely result to the party it contracted with,

21 CA

not some other person, if it failed to deliver the message, or, stating the rule more stringently against defendant, the defendant ought to be in the possession of facts which would put it on inquiry."

Under the rulings of our Supreme Court in the cases hereinafter cited, we are of opinion that the telegram here was such in character as was sufficient to put the defendant upon inquiry, which, if pursued, would have led defendant to know of the relation and that a failure to deliver the telegram would likely result in damages to the sender of the kind here claimed. It is true, as contended in the argument, that, so far as the words of the telegram disclosed, E. Nail (plaintiff), the sender, bore no relation to the baby announced to be dead, and that, for aught appearing from the terms of the telegram, he may have been only "a friend, the undertaker, a physician, or a clergyman." This would suggest itself to the reader of the telegram as a possibility, however, and not as a probability. It is entirely possible that "a friend, the undertaker, a physician, or a clergyman" would presume to send a telegram in his own name, announcing the death of another's baby and calling on the sendee, a relative at a distance, to "come at once," but it is not likely. It is natural and more probable that he would first consult the wishes of the bereaved that are present and then, if they directed, proceed for them, or for some one of them, and as their agent, or as the agent of some one of them, to send the telegram in their own names or in the name of some one of them, and not in his own name or on his own responsibility. Consequently a telegram couched in the language of the one here creates naturally such an inference that the sender bears some relation to the dead and will likely suffer damages, even of the kind here claimed, if the telegram is not delivered to the sendee, who is called upon to "come at once," as to im-

pose upon the agent intrusted with the transmission of that message the duty of inquiring as to such probable relationship and as to such probable damages that may ensue from his failure to discharge the duty he has assumed. The law, therefore, charges it with knowledge of what it should and could have ascertained by reasonable inquiry.

In the case of *Postal Tel. & Cable Co. v. Beal,* 159 Ala. 249, 48 South. 676, which was a suit for the failure to deliver a telegram in words as follows:

"Birmingham, Ala., June 4, '07. Mattie Beal (colored), Tuscaloosa, Ala. John badly hurt, wants to see you at Sidney Coal Mine. [Signed] William James."
—our Supreme Court said, which we think settles the point here:

"So far as the questions presented for consideration are concerned, we are clear in our opinion that whether the relationship between Mattie Beal and the plaintiff was revealed to defendant's agents before or at the time the message was delivered for transmission is immaterial, for the reason that the wording of the message was such as to herald its own importance and the urgency of prompt delivery, and charged the defendant company with notice of the relationship that existed between the parties, and further that, as a natural consequence of a failure to deliver it, plaintiff would be subjected to physical pain and mental suffering."—*Postal Tel. & Cable Co. v. Beal, supra,* and cases cited. See, also, *Western Union Tel. Co. v. Bennett,* 3 Ala. App. 275, 57 South. 87; *Western Union Tel. Co. v. Crocker,* 135 Ala. 492, 33 South. 46, 59 L. R. A. 398; *Western Union Tel. Co. v. McMorris,* 158 Ala. 563, 48 South. 353, 132 Am. St. Rep. 46; *Western Union Tel. Co. v. Benson,* 159 Ala. 254, 48 South. 717; *Western Union Tel. Co. v. Russell,* 4 Ala. App. 485, 58 South. 938.

These considerations dispose of the demurrer and special charges 2, 3, 4, 5, and 6 refused to defendant; and, as the evidence which we have recited was without dispute, the court committed no error in giving the general affirmative charge requested by plaintiff.

The refusal of the court to give the special charge 1 was, if error, error without injury, as it was fully covered by the charges given at defendant's request.

There was no injury, if error, in permitting plaintiff to testify that, as we have pointed out in the recital of the evidence, he postponed or delayed the funeral in waiting for the arrival of his said father-in-law, nor in permitting plaintiff to testify that he had two children. —*West. Union Tel. Co. v. Whitson,* 145 Ala. 426, 41 South. 405; *Griffin v. Bass Foundry Co.,* 135 Ala. 490, 33 South. 177; *Bowling v. M. & M. Ry. Co.,* 128 Ala. 556, 29 South. 584.

The court did not err in allowing plaintiff's father-in-law to testify that, if he had received the telegram, he would have gone to plaintiff as requested.—*Western Union Tel. Co. v. Benson,* 159 Ala. 254, 48 South. 712.

The judgment appealed from is affirmed.

Affirmed.