49 So.2d 673

## WESTERN UNION TEL. CO. v. TATUM.

### 1 Div. 604.

Court of Appeals of Alabama.
Oct. 3, 1950.

Rehearing Denied Oct. 31, 1950.

Lyons, Thomas & Pipes, of Mobile, for appellant.

Harry Seale, of Mobile, for appellee.

**HARWOOD, Judge.**

In the suit below issue was joined on two counts of a complaint in which the plaintiff claimed damages for failure to promptly deliver a telegram addressed to him in Mobile, the defendant having filed a plea of the general issue, and a special plea of limitation of liability of $500.00 because the message had not been repeated. The trial court gave an affirmative charge in favor of the defendant as to this special plea. Clearly one of these counts sounded in tort, and the trial court was of the opinion that both counts sounded in tort, and so charged the jury. The jury returned a general verdict in favor of the plaintiff, and assessed his damages at $500.00.

The evidence submitted by the plaintiff tended to show that about a month prior to 27 December 1947, Captain W. A. Tatum, the plaintiff below, applied to the Harrisville Company, of Jacksonville, Florida, for appointment as master of one of their ships. At the time he discussed his application with Mr. Roy Bowman, manager of the Harrisville Company. Captain Tatum held an unlimited master's license, and had had 42 years experience as a seaman.

On 27 December 1947 the Harrisville Company delivered to the defendant at its office in Jacksonville, Florida, a message to be transmitted to Captain Tatum at 169 Cottage Drive, Mobile, Alabama.

This message reads as follows: "Referring your application please telephone this morning if you are still interested."

This message was received in the Mobile office of the defendant at 9:05, C.S.T. on that same morning, but was not delivered to Captain Tatum, or to this address until 5:45 P.M. of that day.

Captain Tatum testified he had been at his home all of that day.

Upon receipt of the telegram Captain Tatum attempted two or three times during the evening to call the Harrisville Company, but was unable to get them, since the company closed for business around noon, the day being Saturday.

The next morning around 9:30 the defendant company notified Captain Tatum that Mr. Bowman could be reached at a certain phone in Jacksonville. Captain Tatum then tried to call Mr. Bowman, but was unable to contact him for about thirty minutes. When he did connect with Mr. Bowman he was informed that the berth had been filled.

By interrogatories Mr. Bowman testified that he had discussed Captain Tatum's qualifications with him prior to sending the telegram, and found him qualified, that at the time of sending the wire he had available for Captain Tatum a position as master of the M. V. Arawak II, employment to begin at once. The position was held open for Captain Tatum for 24 hours after sending the wire to him, and was filled on the 28th of December.

The vessel made weekly trips from Jacksonville to the Bahamas, and the salary of the Captain was to be $350.00 per month, with no subsistence.

Mr. Bowman further testified that any master engaged by the Harrisville Company was on approval only and had to qualify himself before being given a permanent berth.

By cross interrogatories he testified that ship officers employed by the Harrisville Company were subject to immediate dismissal, with or without cause, and there was no guarantee on the part of the company as to length of employment.

Mr. Moore, accountant for the Harrisville Company, testified by deposition that Captain Tatum's qualifications as a ship's master were satisfactory to the company.

There are two propositions argued in appellant's brief:

First: That the court erred in permitting Captain Tatum to testify, over defendant's objection, that he was ready, able, and willing to accept employment, and

Second: That the damages sought are too speculative, in that the tardily delivered message contained a mere proposal of a contract, and not an offer, and in any event

was contingent upon acceptance by the offeree.

We will first consider the second proposition. Appellant's diligent counsel in his able brief has cited a considerable number of authorities from our sister states which sustain his proposition.

However in Western Union Telegraph Co. v. Mathis, 215 Ala. 282, 110 So. 399, our Supreme Court affirmed a judgment in plaintiff's favor where damages had been awarded for breach of duty in promptly delivering a telegraphic message, the plaintiff having failed, as in this case to secure a position because of the delay in delivering the following message: "Could you accept commercial department high school, thirteen hundred school opens Monday, wire immediately".

Applicable to the proposition now being considered Anderson, C. J., wrote: "We are of the opinion that the offer of the position and request for an answer were sufficient to impress upon the agents of the defendant the need for a prompt delivery and the probable loss to the plaintiff of the position in the absence of a prompt acceptance whether the offer was or was not unconditional, and the proof shows that the plaintiff would have gotten the position had there been a prompt delivery of the message and an acceptance by her."

Appellant's counsel further argues that the damages claimed are further speculative for the reason that there is no criterion for determining them, inasmuch as the company reserved the right to discharge its ship masters at any time, with or without cause.

In this aspect the present case differs from the Mathis case, supra, in that in the Mathis case the proposal concerned employment for a definite term.

What we are concerned with in this case is the value of a chance. Had Captain Tatum been able to transfer his chance of employment on the open market had he received the telegram, would this chance have a probable value?

As observed by Mr. McCormick in his book on damages: "The reader has ob-

served that the standard of 'certainty' is gradually changing in meaning and in application. With increasing confidence in other developing doctrines which are used to control verdicts, such as the doctrines of 'contemplation of the parties' in contract cases and of 'proximate cause' in tort cases, and with increasing flexibility in controlling the size of the verdict on the motion for new trial or on appeal, the judges have come to relax their strict insistence that the jury shall not 'speculate' as to the amount. 'Certainty' becomes 'reasonable certainty' and then 'reasonable probability.' But, even so, by 'reasonable probability' the judges have usually meant something stronger than 'fifty-fifty.' It seems clear that, in passing upon claims for a particular profit lost or gain prevented, of a known amount, they have assumed that, unless the jury found the chances were better than even, unless the accrual was at least more probable than not, they should give nothing at all."

The evidence shows that the appellant's misconduct was the cause of appellee's injury. It further tends to establish by reasonable inference damages resulting proximately from such negligence or misconduct. Recovery should not be denied merely because such damages are difficult of ascertainment. Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589. Or, as stated in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 250, 75 L.Ed. 544: "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he

alone is responsible for making, were otherwise."

In the English case of Chaplin v. Hicks, [1911] 2 K.B. 786, the plaintiff had been selected as one of 50 out of a field of 6000 contestants in a beauty contest. From this field of 50 contestants 12 were to be ultimately selected. The prize for these 12 successful contestants was a promise of employment on the stage for three years at wages of from 3L. to 5L. per week. The defendant failed to notify the plaintiff of the time for her to appear in the final elimination.

The judges were agreed in the decision. In the course of the opinion by Fletcher Moulton L. J., he stated: "Where by a contract a man has a right to belong to a limited class of competitors, he is possessed of something of value, and it is the duty of the jury to estimate the pecuniary value of that advantage if it is taken from him. The present case is a typical one. From a body of 6000, who sent in their photographs, a smaller body of 50 was formed, of which the plaintiff was one, and among that smaller body twelve prizes were allotted for distribution; by reason of the defendant's breach of contract she lost all the advantages of being in the limited competition, and she is entitled to have her loss estimated. I cannot lay down any rule as to the measure of damages in such a case; this must be left to the good sense of the jury. They must, of course, give effect to the consideration that the plaintiff's chance is only one out of four and that they cannot tell whether she would have ultimately proved to be the winner. But having considered all this they may well think that it is of considerable pecuniary value to have got into so small a class, and they must assess the damages accordingly."

We think that the jury in the present case, relying on their "good sense," could reasonably infer a reasonable probability of Captain Tatum's employment, and that such chance of employment had a reasonably substantial value, even though had Captain Tatum obtained the appointment as master the company would have had the right to discharge him at will. The facts and circumstances of a particular transaction, and the nature of the employment must be looked to in determining this question.

The evidence shows Captain Tatum to be highly qualified for the position he sought, with 42 years of experience on the seas. He held an unlimited master's license. Although the company reserved the right to discharge him at will, common sense would compel the inference of a reasonable probability of employment, under the circumstances, for a reasonably substantial time.

We therefore do not think that the lower court erred in refusing appellant's request for the general affirmative charge, nor in denying his motion for a new trial because of the speculative character of the damages sought.

The other proposition raised by the appellant relates to the court's action in overruling his objections to the following questions propounded to the plaintiff on direct examination: "Did you get the job," to which the plaintiff answered "No sir;" and "And you were perfectly able, ready and willing to take it?", to which question the plaintiff gave an affirmative answer.

The first question clearly involved merely a statement of fact, the answer to which was disclosed by the undisputed fact.

The second question, the appellant argues was objectionable because the answer involved the undisclosed intent of the witness, and called for a mental operation.

The question and the court's ruling thereon involves what is commonly known to the bench and bar of this State as the Rule of Exclusion. This rule, found in no other jurisdiction, is to the effect that a witness, whether a party to the cause or not, may not testify to his own intent or other state of mind, notwithstanding the materiality to the case of this intent or state of mind.

As we stated in Ingram v. State, 34 Ala. App. 597, 42 So.2d 30, 34: "Utter confusion exists in our decisions dealing with the application of this rule. In the interest

of brevity we will not attempt to set forth these irreconcilable decisions, but refer those interested in the history and application of this rule to an article by Honorable Russell McElroy to be found in 1 Ala. Lawyer 221, and to the extensive dissenting opinion of Livingston, J., in the recent case of McGuff v. State, 248 Ala. 259, 27 So.2d. 241."

In his excellent and forceful dissent in the McGuff case, supra, Livingston, J., observed that the exceptions engrafted on the original rule have been so extended as to practically destroy it.

Some of our decisions have seemed to simply ignore the rule.

In Western Union Telegraph Co. v. Benson, 159 Ala. 254, 48 So. 712, 719, we find the following statement relative to the point now being considered: "The court, over objection of the defendant, allowed Bill Benson to testify that he would have gone to the burial if he had gotten the telegram in the morning. The complaint avers that Bill Benson would have attended the burial if the telegram had been delivered with proper dispatch; and, it being necessary that such fact be proved, we fail to discern how it could be established otherwise than by the affirmative testimony of the person directly concerned. He was properly allowed to testify."

And in Postal Telegraph-Cable Co. v. Nail, 12 Ala.App. 317, 66 So. 903, 905, this court stated: "The court did not err in allowing plaintiff's father-in-law to testify that, if he had received the telegram, he would have gone to plaintiff as requested. Western Union Telegraph Co. v. Benson, 159 Ala. 254, 48 So. 712."

In Western Union Telegraph Co. v. Ryan, 206 Ala. 511, 90 So. 793, 794, we find the following statement: "The trial court did not err in permitting the sendee, Manderson, to testify that had he gotten the message he could and would have gone to the sender's home at Kellerman. Such testimony has been long since held admissible in that form, and we are not now disposed to reopen the question. Western Union Telegraph Co. v. Heathcoat, 149 Ala. 623, 631, 43 So. 117; Western Union Telegraph Co. v. Benson, 159 Ala. 254, 274, 48 So. 712."

However in Barbour v. Western Union Telegraph Co., 210 Ala. 135, 97 So. 136, 137, which is the latest decision we have been able to find dealing with the exact question now being considered the Supreme Court held: "So of the questions, 'Mr. Barbour, you said something about a taxicab, state whether or not you could have gone after your daughter and brought her here for the funeral?' and 'Would you have done so?' refused to plaintiff. The questions sought to call for an expression of the undisclosed intention of the witness, as to whether or not he would have 'gone after' his daughter if notified, and were properly refused."

Upon examination of the original record in the Mathis case, 215 Ala. 282, 110 So. 399, cited, supra, we find that assignments of error were directed toward the ruling of the lower court in overruling defendant's objections to the following question propounded to the plaintiff on direct examination: "Could you have accepted the proposition at the time you received the telegram?", and in refusing to exclude plaintiff's answer "I would have accepted it." It does not appear from the opinion of the court that these assignments were passed on. They may have been abandoned by the appellant. However the judgment in favor of the plaintiff was affirmed.

We also find that in Robinson & Co. v. Greene, 148 Ala. 434, 43 So. 797, it was held proper to permit a plaintiff in a false imprisonment case to testify that he was detained against his will, "That being a statement of fact."

Also, in Tennessee River Nav. Co. v. Walls, 209 Ala. 320, 96 So. 266, it was held proper to allow a witness to testify he was ready to load and unload cross ties on a barge, as same was a statement of fact, and not a conclusion of the witness.

The above two cases were commented upon in the McGuff opinion, supra, and by inference approved.

484

In the present case the plaintiff was permitted to testify that he was "able, ready, and willing to take the position with the Harrisville Company."

Clearly under the doctrine of the Tennessee River Nav. Co. v. Walls case, supra, it was proper for him to testify that he was ready to take the job, as being a statement of fact. Logically, it would seem that he should be permitted to testify that he was able to take the job for the same reason.

Likewise, it being proper for a witness to testify he was detained against his will, which is the same as saying he was detained unwillingly, it must equally be proper for a witness to testify he was "willing" to act, the only difference being that one involves a prohibition on the will and the other a free will. Both ideas deal with an ultimate question, the exercise of the will.

█ It would appear therefore that under our decisions, if we are correct in our interpretation of them, that no error should attach to the ruling of the lower court in permitting Captain Tatum to testify that he was able, ready and willing to take the position.

█ Be that as it may, the evidence is undisputed that Captain Tatum had applied for the position as master about a month before the wire was sent; he held an unlimited master's ticket; he was in good health and had sailed the seas for 42 years; he made vigorous efforts to contact the Harrisville Company immediately upon the tardy receipt of the wire from them.

The only rational inference that could be drawn from such testimony was that Captain Tatum was not only able, ready and willing to take the position, but that he was extremely anxious to secure the work. With such inferences clear from the testimony, received prior to the question now being considered, we cannot see that any substantial injury probably resulted to the appellant in any event because of the rulings permitting such testimony. Rules of Practice in Supreme Court, rule 45, Code 1940, Tit. 7 Appendix.

Affirmed.