# Western Union Telegraph Co. *v.* Merrill.

*Action for Damages for Failure to Deliver Telegram.*

[Decided June 30, 1905.]

1. *Damages for Failure to Deliver Telegraph Message; Evidence; Presumption.*—When a message is handed a telegraph company for transmission, the presumption is that the sendee lives within the limits of free delivery, or that the sender takes the risk of delivery unless he makes arrangements for delivery at a greater distance. And handing in such message, without explanation, casts no duty on the transmitting operator, other

[Western Union Telegraph Co. v. Merrill.]

than to forward the message with accuracy, and proper diligence. And it casts no duty on the receiving operator other than to copy the message correctly, and to deliver it with all convenient speed, if the sendee resides in the free delivery limits.

2. *Same.*—A failure to send a telegraph message raises the presumption of negligence on the part of the telegraph company, and casts upon it the burden of overcoming the presumption; and if the company wishes to avail itself of the defense that the residence of the sendee and his place of business were beyond the free delivery limits of the company, it should plead and prove that fact. A failure to start the message is a breach of the entire contract.

3. *Pleading and Practice; Demand for Jury Trial.*—An act requiring that, when a jury trial is desired, it must be demanded upon the pleading, does not make such demand a part of the pleading, and is not mandatory. Such demand is not pleading within the scope of rule 4, page 1186 of the code, and it is not necessary that it be signed by the party, or his attorney.

4. *Evidence; Examination of Witness; Opinions and Conclusions.* Opinions and conclusions of a non-expert witness are inadmissible in evidence.

5. *Principal and Agent; Authority of Agent.*—Nothing appearing to the contrary, it will be presumed that the agent of a telegraph company, who is intrusted with the duty of receiving messages for transmission, has authority to bind it by his agreement as to the time for sending a message, even to the extent of disregarding the regulations as to the hours of opening and closing the office to which the message is to be sent.

6 *Damages; Proximate Cause.*—Where some damage is sustained by reason of the failure of a defendant telegraph company to send a message notifying the plaintiff of the serious illness of his wife, it is error to charge as a matter of law that plaintiff was then entitled to recover damages for the mental anguish and pain suffered by him, since the question should be left to the jury, as to whether such failure was the proximate cause of such suffering, or whether the suffering would not have followed, even in case the message had been promptly forwarded and delivered.

APPEAL from Cleburne County Court.

Heard before Hon. T. J. BURTON.

This was an action brought by the appellee, W. B. Merrill, against the Western Union Telegraph Company, and sought to recover damages from the defendant for

failure to promptly transmit and deliver a telegraph message, received by it for transmission to the plaintiff at Edwardsville, Alabama. The complaint contained two counts, which alleged, in effect, that the defendant, a corporation organized and doing business for the receipt and transmission of telegraphic messages, received for transmission a message from one A. S. Abercrombie, addressed to the plaintiff at Edwardsville, advising plaintiff of the serious illness of plaintiff's wife at Birmingham, and saying that she would probably live no more than a day; that said Alexander delivered and paid for said message, as agent and on behalf of plaintiff; that said message was delivered for transmission to the defendant, in Birmingham, Alabama, at about five o'clock P. M. on the 8th day of June, 1902, the defendant being then notified that the person whose illness was mentioned in the message was the wife of the plaintiff, and that it was necessary that the dispatch be sent at once; that the defendant received the message, accepted the payment therefor, but did not forward the message to Edwardsville until the next day, and that, in the meantime, the wife of plaintiff had died; and that plaintiff had, by reason of the failure to send and deliver such message, been unable to see his wife before her death, thereby suffering much mental pain and anguish.

The defendant, when the case was called for trial, moved to strike the same from the jury docket, and continue it, on the ground that the demand for a jury trial, which was endorsed on the complaint, was not signed by the plaintiff, or by his attorney. This motion was denied. Thereupon, the defendant demurred to the complaint, upon the following grounds; first, that it did not appear that the plaintiff was injured in person or estate by the alleged negligence of the defendant; second, that the complaint did not aver that the defendant was informed, or put on notice, that the plaintiff would come to Birmingham, or was expected to come there upon the delivery of the message; third, that it was not alleged that the agency of the sender of the message was disclosed to the defendant; fourth, that it was not alleged that, if the message had been transmitted, it could have

been delivered to the plaintiff on the 8th day of June, 1902.

The demurrer to the complaint was overruled, and thereupon the defendant filed three pleas. The first plea was the general issue; the gist of the second plea was to the effect that the message was written upon one of the blanks of the defendant company, and purported on its face to be received upon an agreement that it would be delivered free, within the established free delivery limits of the terminal office, and that, for a delivery at a greater distance, a special charge would be made; that the plaintiff lived beyond such free delivery limits, and the defendant did not then know this, and was not so informed when the message was handed in, and that no consideration was paid for the delivery of said message beyond the free delivery district. The third plea was similar to the second, except that it further stated that the plaintiff had an office within the free delivery district, but that the message was handed the defendant late on Sunday evening, and that the office of the plaintiff was closed at that time. The plaintiff demurred to the special pleas alleging as a ground of demurrer, that said pleas failed to aver that the defendant promptly and with due diligence transmitted said message. This demurrer was sustained.

The recitals of the facts applicable to the opinion, contained therein, are deemed sufficient for an understanding thereof.

There was verdict and judgment for the plaintiff, from which the defendant takes this appeal.

WALKER, TILLMAN, CAMPBELL & MORROW, for appellant.

H. D. McCARTY and H. D. MERRILL, for appellee.

TYSON, J.—The complaint contains two counts and each predicates a right of recovery upon a breach of contract by defendant, for its failure to transmit and deliver a telegram received from plaintiff's agent, Abercrombie, at Birmingham, to be sent to plaintiff at Edwardsville, containing the information of the serious illness

of the latter's wife.—*W. U. Tel. Co. v. Cunningham,* 99 Ala. 314.

These counts were amended so as to meet certain objections pointed out in the demurrer interposed to each of them. This demurrer was refiled after the amendments were allowed and overruled by the court and properly so.

To the amended complaint the defendant filed two special pleas to which a demurrer was sustained. The first of these averred that plaintiff resided outside the free delivery limits of the town of Edwardsville and that plaintiff's agent, Abercrombie, did not deposit with the receiving officer a special charge to cover the cost of delivery and that the plaintiff's agent did not advise that office of the fact that plaintiff resided beyond the free delivery limits of said town, and that the agent at the receiving office had no knowledge of that fact.

The other plea sets up substantially the same facts, with the additional averment that plaintiff had a law office within the free delivery limits, but that his office was closed between the time the message was received for transportation and the time the train left for Birmingham. Neither of these aver that the company transmitted the message or attempted to transmit it promptly as it contracted to do, and which the law required it to do. "When a message is handed in for transmission the presumption must be and is that sendee lives within the limits of free delivery, or that the sender takes the risk of delivery unless he makes arrangements for delivery at a greater distance. And handing in such message, without explanation, casts no duty on the transmitting operator, other than to forward the message accurately and with proper diligence. And it casts no duty on the terminal employee or operator other than to copy the message correctly and to deliver it with all convenient speed, if the sendee resides within the free delivery limits."—*W. U. Tel. Co. v. Henderson,* 89 Ala. 510, 517.

A failure to send the message raises the presumption of negligence and casts upon defendant the burden of overcoming that presumption.—27 Am. & Eng. Ency. Law (2nd ed.) 1090.

From what we have said it will readily be seen that the facts alleged in these pleas did not relieve the defendant from transmitting the message. If the defendant wished to avail himself of the fact, as a defense for its failure to deliver, that the plaintiff's residence and place of business were beyond the free delivery limits, it should have shown by the pleas that it transmitted the message to its operator at Edwardsville promptly. *Non constat* the plaintiff was within the free delivery limits and his whereabouts known to its operator at that point. A failure to start the message as alleged was a breach of the entire contract.—*W. U. Tel. Co. v. Way,* 83 Ala. 556. The pleas were clearly bad.

There was no merit in the motion to continue the case or to strike it from the jury docket because the demand for a jury, endorsed upon plaintiff's complaint, was not signed by him or his attorney.

The act requiring the demand for a jury to be endorsed on the pleadings does not make such a requirement mandatory.—Acts 1896-7, p. 808, § 11. The demand for a jury is not a pleading within rule 4 of practice, found on page 1186 of the Code.

The question propounded to Abercrombie, "You did not consider him (plaintiff) liable to you for that 25 cents, did you?", was clearly objectionable as calling for the opinion of the witness. Whether plaintiff was liable to witness was a question of law and fact not determinable by him.—*Birmingham Ry. & Elec. Co. v. Franscomb,* 124 Ala. 621.

This witness in the course of his cross-examination testified that he sent another message to plaintiff besides the one on which this action was predicated, but that he did not remember whether plaintiff had repaid him the charge or not. There was no error, therefore, in sustaining the objection to the question by defendant, "Did he (plaintiff) ever pay for any message except this one?" *Evans v. State,* 109 Ala. 11.

The questions propounded by defendant to the witness, Sightly, to which objections were sustained, constituting its 11th, 12th, 13th and 14th assignment of error, were

each properly excluded. The answer to each of them would have involved either the opinion or conclusion of the witness and are not within the principle applied in *Choate v. Southern Ry. Co.,* 119 Ala. 611, conceding the correctness of the application of it in that case. Sightly was not an expert as to the matters inquired of him. His duty, it appears, was to receive the message from the sender and deliver it to the operator for transmission. To permit him to state that he did all in his power to get the message off, would be a conclusion; and that everything was done by the operator and other agents of defendant in the office to get it off, or that nothing was left undone to get it off, would be an opinion. There was a direct conflict in the testimony of this witness and Abercrombie as to the time when this message was received at the office of defendant for transmission. Abercrombie swore that he delivered it to the receiving agent for transmission on Sunday afternoon between 4:35 and 5 p. m.; the witness Sightly swore that he received it at 6:16 p. m. The time when it was received was an important issue of fact in the case. For, if Abercrombie's version of the transaction was true, it was open to the jury to find that had it been transmitted promptly it would have reached the Edwardsville office before that office closed on that day; whereas, if this witness' testimony be true, it was received by him after office hours at the Edwardsville office. For the purpose of testing the recollection of the witness it was within the permissible bounds of cross-examination to ask him as to the time he received the first message for transmission on the day preceding. The testimony of Abercrombie afforded an inference that the receiving agent bound the defendant to transmit the message promptly notwithstanding its regulations as to the office hours of the Edwardsville office. Nothing appearing to the contrary, it is presumed that defendant's agent who was intrusted with receiving messages for transmission had authority to bind it by his agreement as to the time for sending it, even to the extent of disregarding the regulations as to the hours of opening and closing the office at Edwardsville.—*W. U. Tel. Co. v. Crumpton,* 138 Ala. 623.

On the other hand, Sightly testified that, when he received the message at 6:16 p. m., from Abercrombie for transmission; he told him that the office at Edwardsville had closed at 6 o'clock and that he would receive it at Aberchombie's risk and wrote on the back of it "Accepted at senders' risk on account of office closing early on Sundays;" that Abercrombie told him that a train would pass Edwardsville about 7 o'clock and that if his office would call Edwardsville at that time he would be sure to get it. He also testified that Abercrombie insisted that the agent at Edwardsville was at the office, and the testimony of the agent at Edwardsville showed that he was at the office on that afternoon from 6:20 to 7:50, although his office hours on Sunday afternoons were from 4 to 6.

We apprehend that on this version of the transaction it may be declared as a matter of law that it was the duty of defendant to have transmitted the message by 7 p. m., and the risk assumed by Abercrombie was that the Edwardsville agent would not be in his office at that hour, and that such an assumption by Abercrombie did not authorize the defendant to delay its transmission until the next morning. Nor did Abercrombie assume the risk of the failure of defendant's agent at Edwardsville, if present at his office, to receive the message if it was transmitted or his declination to answer the call if one was made on him.

The first exception reserved to the oral charge of the court is, therefore, without merit. The court in its oral charge also instructed the jury that, if the proof showed that plaintiff sustained damages in any sum, then he was entitled to recover for mental anguish and pain occasioned by his failure to receive the message in time to reach Birmingham before his wife died. In this there was error. Whether the failure to transmit and deliver the telegram was the proximate cause of plaintiff's mental anguish occasioned by his failure to be with his wife when she died was, under the evidence, a question of fact for the jury, and not one of law for the court. It cannot be affirmed as matter of law on the testimony that he would have been able to have caught the only train passing Edwardsville on that afternoon for Birming-

[Chambers v. Morris.]

ham, had the message been transmitted promptly and delivered promptly. If Sightly's testimony be true the message could not have been received by the Edwardsville agent before 6:20 p. m:, nor was the defendant under any obligation to transmit it before that time. How long it would have taken that agent to have found plaintiff in order to deliver the message to him is not shown. And again, had it been transmitted at that time and delivered promptly, the testimony tends to show that plaintiff would have had to have gone to Heflin, a distance of some seven or eight miles from Edwardsville, to have caught the train. And just how long it would have taken him to make that trip is not shown. So then, upon this phase of the testimony, whether plaintiff's deprivation of being with his wife in her last hours was attributable to defendant's negligent conduct was a question for the jury and not for the court. We are of the opinion that, on the testimony, the case under each count of the complaint was one for the jury. And also whether the plaintiff suffered mental pain, and whether that was the proximate cause of defendant's conduct, were each questions for the determination of the jury.

These principles will suffice for the guidance of another trial, without reviewing in detail the several written charges refused to defendant.

Reversed and remanded.

MCCLELLAN, C. J., SIMPSON and ANDERSON, JJ., concurring.