# Western Union Telegragh Co. v. McMorris.

## Damages for Delay in Delivery of Telegram.

(Decided Dec. 17, 1908. 48 South. 349.)

1. *Telegraphs and Telephones; Non Delivery; Mental Anguish.*— Mental anguish, although .unaccompanied by injury to person or estate, occasioned by the negligent failure of the telegraph company, furnishes grounds for the recovery of damages, if the parties are within the proper degree of relationship.

2. *Damages; Mental Anguish; Evidence.*—Mental anguish is not susceptible of direct proof, and such proof is not as a rule necessary; but if mental anguish forms an element of recoverable damages it may be inferred from the circumstances attending the particular breach of duty complained of.

3. *Same; Breach of Contract.*—Damages for a breach of a contract are such as reasonably arise naturally from the breach, or as may reasonably be supposed to have been in the contemplation of the parties at the making of the contract as the possible result of such breach.

[Western Union Telegraph Co. v. McMorris.]

4. *Telegraph and Telephone; Non Delivery; Damages; Mental Anguish; Relationship.*—Mental anguish proximately caused by the failure to deliver message or which may be said to arise naturally and proximately from the breach of the contract to transmit and deliver, may be recovered for, if the sender and sendee are within certain degrees of relationship, among which that of brothers fall.

6. *Same; Evidence.*—Where the evidence disclosed that the operator knew that the plaintiff, the sender, and the deceased were brothers, and the message recited, "Caldwell died last night will be down with the remains this evening open grave on our lot" which message was not delivered and as a consequence, when plaintiff reached the town with the remains, there was no one to meet him and no arrangements had been made for the funeral, the jury could infer that the plaintiff had suffered mental anguish, though there was no direct proof thereof, since the message suggested that the sendee would make funeral arrangements, notify relatives, etc.

7. *Same.*—Where there was no evidence that the sendees were at home or at their place of business, the day the message ought to have arrived, or that if they had received the message promptly they would have made arrangements for the funeral, and have notified friends and relatives of the coming of the remains, there could be no recovery for mental anguish.

8. *Same.*—The fact that the funeral was postponed and that it rained on the day of the funeral was inadmissible.

9. *Same; Nominal Damages.*—One sending a telegram requesting the sendee to make arrangements for the funeral of the deceased brother of the sender, where the toll is paid, is entitled to nominal damags at least for the failure to promptly deliver the message.

10. *Same; Toll Paid; Action For.*—The amount paid for the sending of the telegram is not special damages and need not be specially claimed in an action against the company for failure to deliver a telegram; but where it is averred in the complaint as having been paid, the proof and recovery thereof is authorized under the general sum claimed as damages.

11. *Same; Defensive; Strike of Employes.*—Where the agent accepted the toll from the sender and informed him that he had gotten the message off, without mentioning any limitation of liability of the company, the fact that some of the employes of the company were on a strike was not available as a defense to an action for non-delivery of the message.

12. *Trial; Instructions; Absence of Evidence.*—No duty is on the trial court to give charges instructing the jury that there is no evidence of a particular fact.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN DISQUE.

Action by B. Y. McMorris against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The facts are sufficiently stated in the opinion of the court. To the following counts demurrers were interposed and overruled: (4) "Plaintiff claims of defendant corporation the sum of $1,950 for the breach of the following agreement made by plaintiff with defendant on, to wit, the 7th day of September, 1907, by the terms of which the defendant undertook to transmit and deliver within a reasonable time a message in words and figures substantially as follows: [Here follows the message set out in the opinion.] That defendant was engaged in the business of transmitting and delivering telegraph messages for hire between said Rock Springs and Clanton, which hire or reward was paid by plaintiff to defendant. That 'Caldwell,' mentioned in said message, was plaintiff's brother, which fact was known to defendant's agent making said contract at Rock Springs for and on behalf of defendant. That if defendant had carried out his said agreement the plaintiff with said remains would have been met at Clanton on their arrival by friends of himself and said brother. That the grave would have been opened and the arrangements made for the funeral. That plaintiff, relying on said agreement, started with said remains from Rock Springs and arrival at Clanton on the night of September 7, 1907. That defendant had failed to deliver said message within a reasonable time, and in fact it was not delivered until, to wit, September 10, 1907, and as a proximate consequence of the breach of said contract there was no one to meet him and his brother's remains at Clanton, the grave had not been opened, nor had any funeral arrangements been made, thereby delaying said funeral and causing plaintiff great mental pain and anguish, to damages as aforesaid." (6) "Plaintiff claims of defendant corporation the sum of $1,950 damages, for that on, to wit, the 7th day of September, 1907, plaintiff delivered at Rock Springs, Ala.,

to defendant's agent, for transmission from Rock Springs, Ala., to A. Kanter or P. C. Dennis, at Clanton, Ala., a message in words and figures substantially as follows: [Here follows telegram set out in opinion.] And defendant contracted and undertook for a certain sum of money, which plaintiff paid to defendant, to deliver said message within a reasonable time to said A. Kanter or P. C. Dennis at Clanton. Plaintiff avers that defendant was engaged in the business of transmitting telegraphic messages for hire between said two places. Plaintiff further avers that defendant broke said contract in this: That it failed to delived said message within a reasonable time, and on plaintiff arriving at Clanton with said remains there was no one there to meet him, the grave had not been opened, and the funeral was delayed, causing plaintiff to suffer great mental pain and anguish as the proximate consequence of the breach of said agreement. That "Caldwell" mentioned in said message was plaintiff's brother, which fact was known to said defendant." Count 7 is substantially the same as count 4.

There was a general demurrer to the whole complaint on account of misjoinder, and the following grounds of demurrer were assigned to counts 4, 6, and 7: "(1) Said counts claim damages for the breach of what the pleader designates as the following agreement made by plaintiff with the defendant, and fails to set out any contract or agreement with any such certainty that an action can be maintained thereon. (2) Said count fails to show any pecuniary damages or loss to which the mental pain and anguish alleged to have been suffered can be superadded. (3) Said count fails to show any damages from the breach of contract which were within the contemplation of the parties. (4) Said count fails to show any foundation for a recovery for mental pain and anguish."

. The following charges were refused to defendant: "(8) The court charges the jury that they cannot assess damages in favor of plaintiff for any mental distress occasioned by any delay or postponement of the funeral. (9) The court charges the jury that plaintiff in this case is not entitled to recover damages for mental pain or anguish. (10) The court charges the jury that there is no evidence that any failure to make arrangements for the funeral proximately resulted from the failure to deliver the telegram." (11) Affirmative charge to find for defendant. "(12) The court charges the jury that there is no evidence that the plaintiff suffered any mental distress which is the proximate result of the failure to deliver the telegram, growing out of the fact, if it be a fact, that none of the friends of deceased met the body at the depot upon the arrival of the train. (13) The court charges the jury that there is no evidence tending to show that the addressees, or either of them, would have made any arrangements for the funeral, other than opening the grave, prior to the arrival of the train on which plaintiff traveled; and the question as to whether they would have opened the grave or not is a question to be determined by the jury from all the facts and circumstances in the case. (14) The court charges the jury that the only mental pain or anguish for which plaintiff is entitled to recover in this case, in any event, would be such mental pain and anguish as he may have suffered by reason of the fact that the grave was not opened as requested in the telegram. (15) The court charges the jury that there is no evidence tending to show that plaintiff suffered any mental pain or anguish growing out of placing the body in the hands of strangers. (16) The court charges the jury that they cannot assess in favor of plaintiff any damages for mental pain or anguish suffered by plaintiff for and on account

of the failure of the sendee to meet plaintiff at the depot upon the arrival of the train upon which he was travel- ing with the corpse. (17) The court charges the jury that they cannot assess damages in favor of plaintiff for any failure to have funeral arrangements made at or prior to the arrival of train at Clanton on which plain- tiff traveled." (19) Affirmative charge as to the fifth count.

The following portions of the oral charge were except- ed to: (1) "Now, you examine the evidence in this case, gentlemen of the jury, and determine from this evidence reasonably whether upon the receipt of this telegram the people to whom it was addressed would have met that train, would have prepared or made the funeral arrangements, would have dug the grave—in other words, would have made all the funeral arrangements necessary for the purpose of burying this corpse. And you will determine this proposition, gentlemen, from all the facts and attending circumstances in evidence before you, the relationship existing between the parties, their intimacy, and all these matters are directed to you in determining the proposition as to whether or not they would have done these things in the event they had re- ceived this telegram." (2) "If it does and it was, and their not being there was the proximate result of the telegram not having been delivered, then this plaintiff would be entitled to recover for mental anguish." (3) "If you become reasonably satisfied from the evidence in this case that from the language of this telegram, the nature and character of it in announcing the death of this man Caldwell, that his friends would have been there to have met that train, and that funeral arrange- ments would have been made, and the grave dug, then I say, gentlemen of the jury, if you come to that con- clusion from the evidence in the case, you have a right

to consider what the plaintiff had to do after he got there in order to make these preparations, in determining, not a matter of compensation for what he did, but for the purpose of determining the mental anguish, if any, that he suffered in consequence of that particular thing; that is, in consuquence of having to do these particular things because his friendss were not there, and because his friends did not do these things, provided, gentlemen of the jury, as I remarked a moment ago, you are satisfied from the evidence in this case his friends would have done these things."

There was judgment for plaintiff in the sum of $300.

GOODHUE & BLACKWOOD, for appellant. Counsel discuss assignments of error and insist that the facts in this case differentiate it from the case of W. U. Tel. Co. v. Long, 41 South. 965.

CULLI & MARTIN, for appellee. Damages for mental suffering were recoverable under the facts in this case.— W. U. Tel. Co. v. Long, 41 South. 967; W. U. Tel. Co. v. Henderson, 89 Ala. 510; W. U. Tel. Co. v. Ayres, 131 Ala. 391; W. U. Tel. Co. v. Haley, 143 Ala. 586. On these authorities the cause should be affirmed. On the question of the defense of the strike and other matters offered along that line, counsel cite.—27 A. & E. Ency of Law, pp. 1025, 1026, and 1050, and authorities there cited.

DENSON, J.—The appellee, as plaintiff in the court below, recovered of the appellant, Western Union Telegraph Company, a judgment in the sum of $300 for mental anguish alleged to have been suffered on account of breach of contract to promptly transmit and deliver a telegraphic message in the following words and figures: "Rock Springs, Ala. 9/7/1907. Mr. A. Kanter and P. C. Dennis, Clanton, Ala. Caldwell died last night. Will

be down with remains this evening. Open grave on our lot. [Signed] B. Y. McMorris." The principal facts of the case may be summarized as follows:

Plaintiff boarded a Louisville & Nashville Railroad train at 11:47 a. m. Saturday, September 7, 1907, at Rock Springs, in Etowah county, Ala., with his deceased brother's remains, carrying them to Clanton, in Chilton county, Ala., for interment in the family burial ground; the brother having died Friday night. Plaintiff and his brother had formerly lived at Clanton and were well known there, and at this time a sister of theirs and their stepmother were residing at that place; the sister being the wife of a son of P. C. Dennis. Kanter had been a friend of the McMorris family for a long time, and he and the deceased had been roommates for a year or two. When plaintiff arrived at Clanton with the remains of his brother, at 6:00 p. m., Saturday, he found no one at the station to meet him, and that no one knew of his coming or was expecting him. The grave had not been opened, nor had the funeral arrangements been made. The funeral and interment did not occur until about 4 o'clock Sunday afternoon. After plaintiff got off the train at Clanton, Mr. Curry approached plaintiff and was informed by him that his brother's remains were on the train. Then plaintiff, with Curry, Van Derveer, and "one or two others," took the remains out of the express car, placed them on the express truck, and carried them up in front of the depot, where plaintiff stood by the remains 20 or 30 minutes, until P. C. Dennis got to the depot. Dennis and plaintiff then went to a livery stable and procured a wagon, and carried the remains to a hotel, where plaintiff's stepmother was boarding, about 100 yards from the depot. Forty-five minutes elapsed from the time the remains arrived at the depot before they were deposited at the hotel. On Sunday morning

about 9 o'clock the funeral arrangements were made, and at 11 o'clock they were announced at church services in Clanton. On the same morning plaintiff and P. C. Dennis obtained the necessary material and had it carried to the cemetery, and employed a negro man to open the grave and line it with brick, as desired by plaintiff. The remains of the deceased brother were carried to the grave, where funeral services were held, and the interment took place at 4 o'clock in the afternoon; a minister of the gospel officiating.

The plaintiff testified: "A good many people were at the funeral. We had such carriages and such open vehicles as could be obtained on Sunday morning in the town of Clanton." It was raining when the burial took place, but no rain had fallen in the morning. The body was in a good state of preservation at the time of the burial. Deceased had died of inflammatory rheumatism, and decomposition did not set in quickly. The plaintiff is a man, being at the time of the death of his brother 29 years of age, and the deceased was a man 34 years of age. Neither Kanter nor Dennis were related to plaintiff or deceased, but had been acquainted with them for 10 years. The message was not delivered until Monday, the day subsequent to that on which the burial took place; nor had the sendees any notice of the death of the deceased until after the plaintiff, accompanying the remains, reached Clanton Saturday afternoon. At the time the defendant company's agent received the telegram for transmission (9:10 a. m., Saturday) he knew that "Caldwell," referred to in the message, was the brother of plaintiff, the sender of the message. Plaintiff paid defendant's operator at Rock Springs about 40 cents toll for the transmission of the message. The message was delivered to the Rock Springs operator, for the plaintiff, by a Mr. Howard, at said hour and date, and

within 20 minutes it was transmitted to Anniston; the usual route of messages to Clanton being via Anniston and Birmingham, Ala.—that is to say, from Anniston the messages were repeated to Birmingham, and from the latter point to Clanton—and the time usually necessary for the transmission of a message over said route being 20 minutes.

Phillips, the operator at Rock Springs, testified: "While the gentleman who delivered the message for transmission was in the office, I said: 'You tell Mr. Mc-Morris I got the message off; but it is going to be subject to delay, I think, on account of the strike.'" Howard testified that, when he delivered the message to Phillips, he told him that McMorris said to get it off as quickly as he could, and that Phillips replied, "Certainly." The plaintiff testified that when he went to the station at Rock Springs to take the train, about 11 o'clock Saturday morning, he asked Phillips if he got the message off, and the he replied: "Yes, I tried to get it off as soon as Howard delivered it to me; but the wires were busy, and I did not get it off right then, but did get it off a few minutes later."

While it is probably in accordance with the decisions of a majority of the state courts that mental anguish and wounded feelings, alone and unaccompanied by personal injury, do not furnish ground for recovery of damages, yet in this jurisdiction the contrary view prevails, as it does in a number of other states.—*Western, etc., Co. v. Henderson*, 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148; *Western, etc., Co. v. Haley*, 143 Ala. 586, 39 South. 386; *Western, etc., Co. v. Whitson*, 145 Ala. 426, 41 South. 405; *Western, etc., Co. v. Merrill*, 144 Ala. 618, 39 South. 121; *Western, etc., Co. v. Long*, 148 Ala. 202, 41 South. 965. Perhaps the strongest and most satisfactory reasoning in support of the doctrine that men-

tal anguish without accompying personal injury affords
ground for recoverable damages is to be found in the case
of *Mentzer v. Western Union Tel. Co.*, 93 Iowa, 752, 62
N. W. 1, 28 L. R. A. 72, 57 Am. St. Rep. 294. The appel-
lant, conceding that the law in this state is settled as
above stated, yet contends that the undisputed testimony
in the present case does not afford basis for a reasonable
inference that the plaintiff suffered mental anguish. It
is true no witness—not even plaintiff himself—testified
directly that plaintiff suffered mental pain or anguish.
So we have for determination the question: Was that
an indispensable prerequisite to the right of the plaintiff
to have the jury consider mental suffering as an element
of recoverable damages?

In cases of physical injury it has been held that men-
tal suffering cannot be dissociated from physical pain,
and where the latter is found the former is implied.—
*Montgomery, etc., Co. v. Mallette*, 92 Ala. 209, 217, 9
South. 363. Therefore in that class of cases direct proof
of mental suffering is not required, to entitle a plaintiff
to recover for such.—*International, etc., Co. v. Mitchell*
(Tex. Civ. App.) 60 S. W. 996. And it may be stated to
be the rule generally, in Alabama, that, in cases where
wounded feelings or mental pain form an element of re-
coverable damages, direct proof of such suffering is not
necessary, but it may be inferred by the jury from cir-
cumstances attending the particular breach of duty or
contract (*City Nat. Bank v. Jeffries*, 73 Ala. 183, 193;
see, also, *Trinity, etc., R. Co. v. O'Brien*, 18 Tex. Civ.
App. 690, 46 S. W. 389; 13 Cyc. 205); although in a
telegraph case it has been held that the natural utter-
ances and expressions indicative of pleasure, displeasure,
pain,, or suffering are competent original evidence that
may be received in proof of the physical or mental state
they signify, whenever that state is a pertinent inquiry.
*Western, etc., Co. v. Henderson, supra.*

In recognition of the well-established rule that "when two parties have made a contract, which one of them has broken, the damages which the other ought to have for such breach should be such as may fairly and reasonably be considered as arising naturally from such breach, or as may reasonably be supposed to have been in the contemplation of the parties at the inception of the contract as the possible result of a breach of it," this court said : "When the sender of a message has the right to sue a telegraph company for breach of contract in failing to deliver the message, he can also recover damages for mental anguish of which said failure was the proximate consequence."—*Western, etc., Co. v. Henderson, supra.* Under this rule the mental anguish which may be said to arise naturally and proximately from the breach of contracts to transmit telegraphic messages is limited to certain degrees of relationship; and, without here stopping to define the extent of the limitation, it suffices to say that that of brothers falls within the degree recognized by the rule.—*Western, etc., Co. v. Haley,* 143 Ala. 586, 39 South. 386.

Here, when the message was received for transmission, the defendant's operator knew the relationship existing between the sender (plaintiff) and the deceased person referred to in the message was that of brotherhood; and we cannot doubt that the perusal of the message naturally suggested that the purpose was, not only that a grave might be opened and adequate preparations for the funeral made, but that the friends and relatives of the sender might be notified to meet him at the train; and it is likewise not to be questioned that it was a natural presumption therefrom that plaintiff would suffer mental pain should he find, on his arrival at Clanton, that by reason of failure to deliver the message all these objects had miscarried.—*Western, etc., Co. v. Long* 148

Ala. 202, 41 South. 965; *Western, etc., Co. v. Coffin*, 88 Tex. 94, 30 S. W. 896; *Western, etc., Co. v. Broesche*, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843; *Western, etc., Co. v. Carter*, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826; *Cashion v. Western, etc., Co.*, 123 N. C. 267, 31 S. E. 493. The injury in such a case may be said to be the natural result of a failure to deliver the message, and must have been in the contemplation of the parties when the contract for the transmission of the message was made. Then, if the facts showing liability are proved, we believe it is the settled law that the jury may infer the fact of mental suffering, because it is recognized as a common result under such circumstances, and the direct proof is not indispensible to show that mental suffering did ensue.—*Western, etc., Co. v. Crocker*, 135 Ala. 492, 33 South. 45, 59 L. R. A. 398; *Western, etc., Co. v. Merrill*, 144 Ala. 618, 39 South. 121, 113 Am. St. Rep. 66; *Willis v. Western, etc., Co.* 69 S. C. 531, 48 S. E. 538, 104 Am. St. Rep. 828, 2 Am. & Eng. Ann. Cas. 52, and notes and cases cited therein.

But we notice, in this evidence, the lack of a link which we deem indispensible to a case of liability against the defendant for damages for mental suffering. While the testimony shows that Kanter and P. C. Dennis, the sendees of the message, resided within a fourth of a mile of defendant's office in Clanton, and that their places of business were probably within 150 yards of defendant's office, there seems to have been no effort to prove that they were at home or at their places of business during Saturday, except that it is shown that plaintiff, after the train arrived, found Dennis at his place of business; nor is there any evidence to show that the sendees, if they had received the telegram promptly Saturday, would have made arrangements for the funeral, and have had the grave prepared, any earlier. These were

facts involved in the issues, provable by the sendees, and we know of no rule of evidence which authorizes the presumption that the sendees were at home or at their places of business, or that they could or would have notified the relatives and friends of the plaintiff and of deceased of plaintiff's expected arrival on the train, or that they could or would have made arrangements for the funeral and a grave, at an earlier hour.—*Bright v. Western, etc., Co.,* 132 N. C. 326, 43 S. E. 841; *Hancock v. Western, etc., Co.,* 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 403.

On these considerations, charges 8, 9, 16, 17, and 18, assert correct principles and should have been given; while charge 14 is subject to criticism if at all, merely for being more favorable to plaintiff than warranted under the facts.

For the same reasons, evidence that rain fell Sunday afternoon was improperly admitted.

Some portions of the oral charge of the court excepted to (in view of what has been said above) are abstract.

A trial court is under no duty to give charges which instruct the jury that there is no evidence of a fact, and therefore no error is involved in the refusal of charges 10, 12, 13, and 15 in defendant's series.—*Mobile, etc., Co. v. Walsh,* 146 Ala. 295, 40 South. 560.

Charge 11 was properly refused as plaintiff, under the facts, was entitled to nominal damages at least.

The amount paid by the plaintiff as toll for the transmission of the message is not special damages, necessary to be specifically claimed in the complaint as a condition of its recovery; but, if it is averred in the complaint, as having been paid this authorizes proof and recovery thereof under the general sum claimed as damages.— 5 Ency. Pl. & Pr. 748; *Wilkerson v. Searcy,* 76 Ala. 176; *Dowdell v. King,* 97 Ala. 635, 12 South. 405. It follows therefore, that the demurrers to counts 4, 6, and 7, in-

sisted by appellant as being well taken were properly overruled; and for the same reasons the affirmative charges, requested by the appellant is respect to these counts, based upon the theory that the toll paid is not claimed as a part of the damages, were properly refused.

According to Phillips' (the transmitting operator's) own evidence, he said nothing to Howard (who delivered the message for the plaintiff) in regard to the message being subject to delay on account of the strike until after he had accepted same and transmited it to Anniston; and what he said did not amount to a contract limiting defendant's liability for failure to transmit, or for delay in transmitting, on account of a "strike," or of any other cause. Then, too, the undisputed testimony shows that Phillips accepted the toll from plaintiff, and informed him he had gotten the message off, without mentioning any limitatation on the liability of the company. Under these conditions, the fact that some of the company's employes were on a strike was not available as a defense to the defendant, and the court committed no error in refusing to allow proof of that fact.—27 Am. & Eng. Ency. 1026, 1050.

We have considered all the grounds of error which have been pressed upon our attention; and for the errors pointed out the judgment of the city court must be reversed, and the cause remanded.

Reversed and remanded.

Tyson, C. J., and Simpson and Anderson, JJ., concur.