# Western Union Tel. Co. *v.* Cleveland.

*Damage for Failure to Deliver Message.*

(Decided May 12, 1910. 53 South. 80.)

1. *Telegraphs and Telephones; Agency; Pleading.*—The allegations of the complaint as to the agency of the sender examined and held to show that the sender acted as the agent of the sendee in the sending of a telegram.

2. *Same; Death Message; Damages; Mental Anguish.*—Damages for mental anguish suffered by one prevented from seeing his mother during her last conscious hours on account of the failure of the telegraph company to promptly deliver a message relative thereto may be recovered.

3. *Same; Discretion of Jury.*—In assessing damages for mental pain caused by delay in the delivery of a message summoning the addressee to his mother's death-bed, the jury has a large discretion.

4. *Same.*—Where on account of a telegraph company's delay in delivering a telegram summoning the addressee to his mother's death-bed, the addressee failed to arrive while she was conscious, a judgment assessing his damages at $500 is not excessive.

5. *Same; Delay in Delivery; Diligence.*—It was immaterial whether the telegram was addressed "in care of" or "with" a certain concern, on an issue as to diligence in delivery.

6. *Same; Evidence.*—Where the delay was caused by another messenger, the company could not show diligence to deliver at a particular place.

[Western Union Tel. Co. v. Cleveland.]

7. *Same; Rules; Office Hours; Waiver.*—Where the sender was not informed that the receiving office would be closed until the arrival of the Sunday hour for opening, the company waived its right to transmit the message during such hour when it received it before those hours.

8. *Same; Instructions.*—Where a telegram was addressed to the sendee in care of a business concern, a charge asserting that if such concern's office was not .open on Sunday, a delivery the next morning was within a reasonable time, ignored the company's duty to use diligence to deliver the message to the addressee in person, and was properly refused.

9. *Charge of Court; Assuming Facts.*—A charge asserting that a telegraph company was liable for mental pain, caused the addressee by a delay in delivering a telegram, summoning him to his mother's death-bed, did not assume that the addressee sustained such pain.

10. *Appeal and Error; Review; Admission of Evidence.*—Unless the bill of exceptions shows that there was no opportunity to object in advance, it will·be presumed on appeal that the evidence would not have been received over timely objection, and hence, the refusal to strike such evidence is not reversible error.

11. *Evidence; Competency.*—Where the action was against a telegraph company for delay in delivering a telegram summoning the addressee to his mother's death-bed, it was not competent for the addressee to testify that he suffered mental pain because he failed ·to arrive during her last conscious hours. (Overruling W. U. Tel. Co. v. Heathcoat, 149 Ala. 623, and W. U. Tel. Co. v. Benson, 159 Ala. 254, as to the rule there declared.)

12. *Damages; Mental Suffering; Inference.*—The existence of mental suffering may be inferred by the jury from the particular circumstances attending the case.

(McClellan and Mayfield, JJ., dissent.)

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by J. B. Cleveland against the Western Union Telegraph Company for a failure to deliver a message. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The allegation as to agency is as follows: "Plaintiff claims of the defendant corporation $1,999 damages for the breach of the contract, in that plaintiff, through his agent, W. J. Cleveland, heretofore, to wit, on or about the 29th day of December, 1907, at Altoona, Ala., in the county of Etowah, employed for a reward the defendant," etc., "to transport from Altoona, Ala., to An-

niston, Ala., a message to plaintiff as follows: 'Altoona, Dec. 29, 1907. To J. B. Cleveland, with Forbes Piano Co., Anniston, Ala., Come at once; mother is very low. W. J. Cleveland.' " The same allegation is made in the second count. The third count alleges further, that plaintiff's mother was in feeble health at Altoona, and that on account of this, and about a month before, he arranged with his brother, near whom his mother lived in Altoona, to telegraph him at Anniston in the event his mother grew worse, and in consequence of this arrangement his brother did send him the message heretofore set out, or rather delivered it to the telegraph company and paid the toll.

The following charges were refused to the defendant: (4) "The court charges the jury that if they find from the evidence that the contract made between the parties was to deliver a message to plaintiff in care of Forbes Piano Company, at Anniston, Ala., and that Forbes Piano Company was a business concern which did not keep open its offices on Sunday, and if the message was sent on Sunday, then a delivery to Forbes Piano Company on Monday morning at 8:30 o'clock would be a reasonable time in which to deliver said message." (7) "The court charges the jury that if they find from the evidence that defendant's office hours on Sundays at Anniston were from 4 to 6 o'clock in the afternoon, and that such hours were reasonable, then no duty rests on the defendant to undertake the transmission of said message until 4 o'clock p. m. of that day."

The following charge was given at the request of the plaintiff: (26) "The court charges the jury that it was the duty of the telegraph company to send off the message from Altoona within a reasonable time, and if the jury are reasonably satisfied from the evidence that the

company failed to send off the message within a reasonable time, then the company is liable in this case, and the plaintiff is entitled to recover such damages as he proximately sustained thereby in mental pain and suffering, not exceeding the amount claimed in the complaint, provided the jury are reasonably satisfied from the evidence that W. J. Cleveland was his brother's agent to send the telegram in this case."

There was motion for a new trial, based upon several grounds, one of which was the excessiveness of the verdict. The verdict was for $500.

GOODHUE & BLACKWOOD, for appellant. The court erred in overruling demurrers to the 3rd and 4th counts. *Sellers v. Ins. Co.,* 105 Ala. 291; 31 Cyc. 1215 and 1218; Wharton's Law of Agency, Sec. 1. The court erred in permitting Cleveland to testify that he asked the agent if he got the message through, and the agent said he did.—*Hill v. Helton,* 80 Ala. 528; 89 Ala. 521. The court erred in permitting the addressee to say that he suffered mental pain because of not reaching his mother's bedside in time.—*W. U. T. Co. v. Northcutt,* 48 So. 553; *City Nat. Bank v. Jeffries,* 72 Ala. 183. Counsel discuss other assignments of error as to evidence, but without citation of authority. The court erred in refusing charge 4.—29 Fed. 703; 29 Wis. 615; 1 Words & Phrases, 971. Counsel discuss other charges given and refused, but without citation of authority.

M. C. SIVLEY, and DORTCH, MARTIN & ALLEN, for appellee. It was competent for plaintiff to testify that he suffered mental pain.—*W. U. T. Co. v. Heathcoat,* 149 Ala. 623; *Same v. Benson,* 48 So. 712; *Same v. Mc-Morris,* 48 So. 349; 3 Wig., Sec. 966; 105 Md. 280; 12 A. & E. Ann. Cases, 1; 118 Am. St. Rep. 796; 12 S. E.

427; 47 S. E. 745; 55 S. E. 435; 57 Am. St. Rep. 294. The admission was error without injury in any event. —75 Tex. 531; 118 Am. St. Rep. 796; 3 Mayf. 397. Counsel discuss other assignments of error, but without citation of authority. They insist that the court properly refused charge 4 requested by the defendant. —W. U. T. Co. v. Rowell, 153 Ala. 295. They insist that charge 7 was also properly refused.—W. U. T. Co. v. Crumpton, 138 Ala. 643; Same v. Merrill, 144 Ala. 618. They discuss other charges, but without citation of authority.

SAYRE, J.—Appellee sued in contract for failure to deliver promptly a message informing him of the fatal illness of his mother. The sender of the message was plaintiff's brother. The court is of opinion that the complaint, when considered in all such of its parts as affect the question of the sender's agency for the sendee, sufficiently showed that relation to the making of the contract with the defendant for the transmission and delivery of the telegram.

Special damages were claimed and recovered for mental anguish arising out of plaintiff's failure to see his mother during her last conscious hours, consequent upon the delay in delivering the message. The right to recover such damages in such cases has been settled in this court.—W. U. Tel. Co. v. Kirchbaum, 132 Ala. 535, 31 South. 607; W. U. Tel. Co. v. Rowell, 153 Ala. 295, 45 South. 73. Plaintiff was allowed, over the objection and exception of the defendant, to testify that he had suffered mental pain and anguish on account of not reaching his mother's bedside during her conscious hours. The main controversy between the parties to this appeal turns about this point. The cases are cited, and we will consider them as briefly as may be. In W.

*U. Tel. Co. v. Heathcoat,* 149 Ala. 623, 43 South. 117, the plaintiff was permitted to testify that she "suffered mental sorrow, distress and regret on account of not seeing my (her) brother before his death." The objection taken in the trial court was that the witness was undertaking to decide what it was for the jury to determine, and, further, that the testimony was immaterial, irrelevant, and incompetent. The court said on appeal: "It was competent for the plaintiff to testify that she had suffered mental pain and anguish. At least, the objections to the question calling for such evidence are not tenable"—citing *Eckles v. Bates,* 26 Ala. 655, and *Birmingham Ry. Co. v. Hale,* 90 Ala. 8, 8 South. 142, 24 Am. St. Rep. 748. In the first of the cases there cited it had been held that the declarations of a slave, incompetent to testify against a white person, relative to the symptoms and nature of the diseases under which he labored at the time, were admissible as original evidence as being of the res gestae of his sickness, as well as upon the necessity of the case; the soundness of the slave being the issue in controversy. In the second of those cases the plaintiff, to show the extent of her injury, was permitted to introduce the testimony of her physician that when he saw her after the injury she was complaining of pain. In *W. U. Tel. Co. v. Northcutt,* 158 Ala. 539, 48 South. 553, a case which went to the conference of the whole court, including three of the justices who had participated in the decision of *Heathcoat's Case,* that case being cited and noticed by the court, though in another connection, the question here involved was ruled to the contrary on the authority of *City National Bank v. Jeffries,* 73 Ala. 183. In the recent case of *Mattingly v. Houston,* 167 Ala. 167, 52 South. 78, *Bank v. Jeffries* was followed. In *W. U. Tel. Co. v. Benson,* 159 Ala. 254, 48 South. 712, on the

[Western Union Tel. Co. v. Cleveland.]

authority of *Heathcoat's Case, supra,* and some cases decided by the Supreme Court of North Carolina, it was ruled that the plaintiff might testify that he would have been present at the funeral of his relative if he had received the telegram of notification. There are scores of cases in this state holding to the contrary of the *Heathcoat* and *Benson Cases.* We have consulted the following: *Sledge v. Scott,* 56 Ala. 207; *Sternau v. Marx,* 58 Ala. 608; *Mobile Life Ins. Co. v. Walker,* 58 Ala. 290; *Herring v. Skaggs,* 62 Ala. 202, 34 Am. Rep. 4; *Wheless v. Rhodes,* 70 Ala. 420; *Burns v. Campbell,* 71 Ala. 291; *Baker v. Trotter,* 73 Ala. 281; *McCormick v. Joseph,* 77 Ala. 236; *Ala. Fertilizer Co. v. Reynolds,* 79 Ala. 497; *Ball v. Farley,* 81 Ala. 288, 1 South. 253; *Burks v. Bragg,* 89 Ala. 204, 7 South. 156; *E. T. V. & G. R. R. Co. v. Davis,* 91 Ala. 621, 8 South. 349; *Fitzpatrick v. Brigman,* 130 Ala. 450, 30 South. 500; *Burke v. State,* 71 Ala. 382; *Wilson v. State,* 73 Ala. 527; *Johnson v. State,* 102 Ala. 1, 16 South. 99; *Dent v. State,* 105 Ala. 14, 17 South. 94; *Holmes v. State,* 136 Ala. 80, 34 South. 180. Consistently, it was said, with the rule of the foregoing cases, it was held in *Linneham v. State,* 120 Ala. 293, 25 South. 6, that a party might, upon cross-examination, be required to testify as to his motives, intentions, or mental state, where those facts are relevant to issues involved. That rule was also stated in the early case of *Peake v. Stout,* 8 Ala. 647. It may be that, in principle, both these rules are illogical survivals of the common-law rule of disqualification for interest, and certainly they are not within any exception of the statute abrogating the common-law rule on the subject. It is conceded, also, that the great weight of authority in other states is to the contrary. But not every syllogism serves the ends of justice, though the law is a reasonable science. Our own

rule has been approved by a long line of judges as being the better adapted to the ascertainment of the truth of human transactions. No failures of justice have been observed to result from it, and this court as at present constituted, upon consultation and consideration of the *Heathcoat* and *Benson Cases,* along with the rest, is disposed to adhere to the rule which has obtained in this state from the beginning. We have considered together the questions raised by the conflict between the *Heathcoat* and *Benson Cases,* on one hand, and those numerous cases referred to, on the other. They are one question. In *Bank v. Jeffries* the rule for exclusion of statements of mental conditions was taken as beyond dispute as the citation of authority shows. The peculiar feature of that case is to be found in its answer to the proposition that, since plaintiff suffered to an extraordinary degree, he ought to have been permitted to state the peculiar phases of his suffering, as that he was almost crazy. This was denied because for wrongs identical in nature and degree the man of delicate organism and acute sensibilities is entitled to no greater damages than one of a more stoical nature. We think juries may be relied on to draw proper inferences from facts and circumstances capable of proof under the rule which has long prevailed in this state. They may and do infer mental suffering because it is recognized as a common result of those circumstances which establish a legal liability for damages to estate in cases of this character.—*W. U. Tel. Co. v. McMorris,* 158 Ala. 563, 48 South. 349. And, as a practical proposition, it is better so than that the plaintiff be allowed to embellish his story by recounting every operation of memory or imagination which may have added poignancy to his grief. The court below was induced, no doubt, to its ruling by the decision in the *Heathcoat Case.* It erred

nevertheless. However, the plaintiff did no more than make the bare statement that he suffered pain and anguish, a fact which the jury would have inferred from other facts in evidence, if believed to exist, without the aid of his statement.—*W. U. Tel. Co. v. Ayers,* 131 Ala. 391, 31 South. 78, 90 Am. St. Rep. 92; Joyce on Elec. §§ 818-820; *W. U. Tel. Co. v. McMorris, supra.* He testified to nothing calculated to move the jury to an assessment of damages by a measure peculiar to his case. The writer is strongly inclined to hold that no injury resulted to the defendant from the ruling in question, and that the judgment ought to be affirmed. However, Dowdell, C. J., Simpson, Anderson, and Evans, JJ., hold that the error was prejudicial, the judgment will be reversed and the cause remanded. McClellan and Mayfield, JJ., hold that there was no error. They dissent.

Plaintiff's brother testified that he delivered the telegram to the defendant's agent at Altoona about noon on Sunday, the 29th of December, and that about half an hour later he asked the agent if he had got the message through, and the agent said he had. A motion to exclude on the ground that the agent's declaration was of a past transaction and not made within the scope of his agency was overruled. If this objection could have been effective in any event, it cannot avail for a reversal because the presumption must be, in that case, that the evidence would not have been permitted over a timely objection. If the evidence was delivered in a narrative form so that defendant had no opportunity to object in advance, this fact should have been shown in the bill of exceptions.

Cassie Gordon, the messenger to whom the telegram was intrusted for delivery after its arrival at Anniston, testified with particularity to inquiries made at numer-

ous places for the plaintiff in the effort to effect a delivery, testifying, among other things, that he went to every place where the general manager told him to go. We find no reversible error in the refusal of the court to permit him to testify that the general manager had told him to inquire at a particular place. It was competent to show due diligence in the effort to deliver, but a mere direction to a messenger, unless followed by action in pursuance thereof, did not constitute diligence on the part of the messenger to whom the message was finally intrusted for delivery, and for whose default the defendant thereby became responsible.

In view of some conflict in the evidence as to the address of the telegram, the court below charged the jury at defendant's request, that, whether the telegram read "J. B. Cleveland, with Forbes Piano Co." or "J. B. Cleveland, care Forbes Piano Co.," the defendant could properly deliver the telegram to the Forbes Piano Company, and was not responsible for any delay that may have occurred after such delivery to Forbes Piano Company. The evidence was without dispute that, whatever efforts may have been made to deliver to plaintiff in person, delivery was finally made to an employe of the Forbes Piano Company at its business house. In other requests for instructions the defendant put forward the propositions, separately and alternatively, that plaintiff could not recover whether the message was directed to "J. B. Cleveland, with Forbes Piano Co.," or "J. B. Cleveland, care Forbes Piano Co." It was held in *W. U. Tel. Co. v. Rowell,* 153 Ala. 295, 45 South. 73, that, where a telegraphic message was addressed to plaintiff in the care of another, the latter was thereby constituted the agent of the former to receive the message, and that a delivery to the person in whose care the plaintiff was addressed was a delivery to

the plaintiff. The law of that case is not drawn into question, nor is it doubted. The contention is for some distinction between the effect of the two addresses shown in this case by the divergent tendencies of the evidence, it being argued that where a telegram is addressed to one "with" another, the additional words amount to nothing more than a description of the addressee affording a means whereby he may be located. But we have been unable to find any substantial difference between the two forms of address. In strict reason, and to the ordinary apprehension, they amount to the same thing. These requests were properly refused.

Charge 4, refused to defendant, stated the proposition that if the message, received for transmission on Sunday, was directed to plaintiff in care of the Forbes Piano Company, a business concern which did not keep its office open on Sunday, its delivery to the Piano Company on Monday morning at 8:30 o'clock would be a delivery within a reasonable time. There was evidence going to show a delivery to the Piano Company at the hour hypothesized. The charge has this fault: It precludes anything of the duty of the defendant to exercise due diligence to deliver to plaintiff in person when it became known that a delivery could not be made to the piano Company on Sunday. Its duty then was to look elsewhere.

The court refused to instruct the jury that if the defendant's office hours on Sundays at Anniston, the terminal office for this message, were from 4 to 6 o'clock in the afternoon, and such hours were reasonable, no duty rested on defendant to undertake the transmission of the message until 4 o'clock p. m. of that day. The evidence was in conflict as to whether the agent at Altoona informed plaintiff that the Anniston office would not be open for the receipt of messages until 4 o'clock.

[Western Union Tel. Co. v. Cleveland.]

It was necessary for the court to bear in mind that the jury might find this fact for the plaintiff. There is no evidence that plaintiff had information of defendant's rule from other sources. On that aspect of the case thus presented—an aspect which the jury had a right to adopt as the true one—the receipt of the message for transmission and delivery out of office hours would constitute a waiver of the rule governing its hours for doing business at Anniston.—*W. U. Tel. Co. v. Hill*, 163 Ala. 181, 50 So. 248, 23 L. R. A. (N. S.) 648.

Appellant complains that charge 26, given at plaintiff's request, assumed that plaintiff did sustain mental pain and suffering on account of delay in the delivery of the telegram. As we read the charge, it did not take this question away from the jury, and was not subject to the vice imputed to it.

We are ready to admit that damages were awarded to plaintiff in ample measure; but in cases calling for the assessment of damages of the sort here recoverable, much must be left to the jury. We cannot say that the assessment evidences improper motive, and the verdict will be allowed to stand.

Some other questions are raised, but they are rather cursorily treated in the briefs  All have been considered without finding reversible error save on the single proposition heretofore noted.

The judgment is reversed. The cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, and EVANS, JJ., concur. McCLELLAN and MAYFIELD, JJ., dissent.