# Western Union Telegraph Co. *v.* Leland.

*Action for Damages for Failure to Deliver Telegram.*

*Telegraphs and Telephones; Messages; Failure to Deliver; Mental Anguish.*—Where it appeared that the failure to deliver a telegram to which an answer was expected did not change the plaintiff's plan, and no proof was offered tending to show that such an answer would have relieved plaintiff's mental condition, it cannot be said that the failure to deliver the telegram proximately increased or decreased plaintiff's mental anguish in the least, and hence there could be no recovery for mental anguish.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Action by R. M. Leland against the Western Union Telegraph Company, for failure to deliver telegram. Judgment for plaintiff in the sum of $500, and defendant appeals. Reversed and remanded.

For former report of this case, see 45 South. 217.

GEORGE H. FEARONS, and HENRY FITTS, for appellant. Under the facts in this case, no damage was shown from the failure to deliver the telegram.—*Chapman v.*

*W. U. Tel. Co.,* 88 Ga. 763; *McAllen v. W. U. Tel. Co.,* 7 S. W. 715; *Westmoreland's Case,* 44 South. 382; *Wilson's Case,* 93 Ala. 32; *Seed's Case,* 115 Ala. 674; *Adair's Case,* 115 Ala. 441; *Crumpton's Case,* 138 Ala. 644; *Railroad Co. v. Hester,* 122 Ala. 249.

FOSTER & OLIVER, and FLEETWOOD RICE, for appellee. Mental anguish and pain caused by breach of a contract to send and deliver a telegram are proximate damages where there is a relation of parties and a presumption of natural affection, and the message relates to exceptional events, such as sickness or death,—if the failure to deliver the message obviously comprehends mental distress and anguish.—*Western Union Tel. Co. v. Westmoreland,* 44 So. 382; *Western Union Tel. Co. v. Haley,* 143 Ala. 586; *Western Union Tel. Co. v. Henderson,* 89 Ala. 510; *Western Union Tel. Co. v. Long,* 41 So. 965; *Western Union Tel. Co. v. Crumpton,* 138 Ala. 643.

ANDERSON, J.—It is needless for us to decide whether or not the defendant's failure to properly transmit and deliver the message lodged with its agent at 4:38 p. m., would entitle the plaintiff to recover for mental anguish, if any had resulted from said failure to transmit and deliver, as the proof fails to show that the plaintiff sustained any mental anguish as the proximate result of the defendant's negligence. The plaintiff was fully apprised of his son's condition, was on his way to his bedside, had telegraphed that he would be there on "No 1," and there is no proof that an answer to his message, favorable or unfavorable, would have changed his plains. Robbins, the clerk, was keeping him posted as to his son's condition, and would have doubtless wired him if his child continued to grow worse,

or that the operation, if performed, had proven fatal, whether he got the plaintiff's last message or not. The plaintiff was already anxious and apprehensive about his child, and the only good that could come to him · from a prompt delivery of the message was that it might elicit a favorable response, and thus relieve, in a measure, his anxiety between the time the reply reached him and the next morning, when he reached his son's bedside. There is no proof, however, that Robbins could have given him any favorable information, as there is no proof that the child's condition improved between the time that the message should have been delivered to Robbins and the hour when plaintiff left Tuscaloosa. On the other hand, the operation was not performed until the next day, and after plaintiff's arrival, notwithstanding he had authorized it by a message which was promptly delivered. The failure to deliver the telegram in question did not, under the proof, proximately increase or diminish in the slightest degree the mental anguish of the plaintiff, and the trial court erred in refusing charge 1, requested by the defendant.

The judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and HARALSON, DOWDELL, SIMPSON, and DENSON, JJ., concurring.

McCLELLAN, J.—(dissenting). The action seems to be for the breach of the contract, and the testimony shows, without dispute, that it was breached to the damage of the appellee, Leland. It appears, without conflict, from the proof: That Leland's son was ill at Stafford Springs. That Leland, being at Tuscaloosa, arranged with Robbins to keep him advised of the condition

of his son. That Robbins wired Leland: "Doctor advises Henry condition worse. Shall we tap preserve life? Answer." That Leland immediately replied: "Call Dr. Harbin, have him do what he thinks best to save child." That later in the day of December 27th, at 4:38 p. m. Leland filed with the appellant's agent at Tuscaloosa this message: "Wire Henry's condition seven tonight. Be down on number one." That something after the hour stated Leland visited the office of the appellant, where the operator at first told Leland that the last message had been promptly sent, but later admitted to Leland "that he (the operator) had forgotten to send the message last above quoted in the afternoon, and that he had sent it after supper, which was after 7 o'clock, and that the message was not delivered to Robbins till the next day, after Leland's arrival at Stafford Springs.

My Brothers hold that, in the absence of affirmative proof of mental anguish suffered by Leland, the father, in consequence of the failure to promptly transmit the last message, even though Leland had arranged with Robbins to keep him informed of his son's condition, there could be no recovery for mental anguish, and only for nominal damages, together with the price of the message and interest thereon. I am of the opinion that the court below properly refused charge 1, which stated the law of the case to be as is now ruled by this court. "In trials of fact it will be generally found that the factum probandum is either directly attested by those who speak from their actual and personal knowledge of its existence, or it is to be inferred from other facts satisfactorily proved." 1 Greenleaf on Ev. § 13. Within the latter provision of the rule quoted and from the undisputed testimony presented, the jury were authorized to infer mental suffering by Leland in consequence of a

C 22

failure of news of his son's condition, resultant from the nontransmission or delivery of the message last quoted. while proof of such suffering on Leland's part would have been admissible, yet proof thereof was not essential to warrant the jury in imposing damages therefor.— In *W. U. Tel. Co. v. Ayers,* 131 Ala. 394, 31 South. 79, 90 Am. St. Rep. 92, it is said: "That the father of Ina in the present case suffered great mental pain and anguish on account of her approaching death was most natural, and *the law would presume as much* (italics supplied). * * *" In *W. U. Tel. Co. v. Adams,* 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 846, 16 Am. St. Rep. 920, it is said: "As the jury could be instructed that they might, in assessing damages, include her mental anguish in their estimate, it was doubtless thought that evidence of her mental condition, including expressions of it at the time, might be given. As juries may, from their own knowledge and experience of human nature, estimate damages proceeding from that cause without any evidence, it is not important to produce it, and, when produced, it ought not, as a general rule, to have a controlling effect. * * *" Joyce on El. §§ 819, 820; *W. U. Tel. Co. v. Randles* (Tex. Civ. App.) 34 S. W. 447.

The company knew of the illness, that an operation was proboble, that the father would arrive at the son's bedside the next morning, and that he desired to know the condition of the son at seven that night. From all this it seems to me no man could doubt that a father of a desperately sick child would naturally mentally suffer from the very fact that he could not hear of his child's condition. If so, what an injustice it is to shield the derelict party, whose wrong has inflicted upon the father the consequences of a most natural anxiety to know the condition of his child, by the response that, "had my

[Heathcoat v. Western Union Telegraph Co.]

duty been done, which was knowingly undertaken, no cheering news would have come." As well might it be said of a father, sought to be called to the bedside of a child literally dismembered, though living, that had the message been delivered, and had the father reached the child, his parental heart would have felt an added pang because of the sight of his mangled offspring. Leland had the right to know the condition of his child, whether it was better or worse, whether it had been put to the knife or not, and not knowing, as he would, had the message been properly handled, common knowledge brings all to know that he naturally suffered from the silence that prevailed because his message was not sent.

*Action for Damages for Failure to Deliver Telegram.*

