(99 South. 728)

## WRIGHT–NAVE CONTRACTING CO. et al. v. ALABAMA FUEL & IRON CO.
### (6 Div. 953.)

(Supreme Court of Alabama.  April 10, 1924.)

**1. Trial ⬤➡143—Affirmative charge should not be given when evidence in conflict.**

The affirmative charge should not be given when the evidence conflicts, or when inferences may be drawn against party requesting such charge.

**2. Master and servant ⬤➡319 — Employer responsible for intrinsically dangerous work by independent contractor.**

One who has work done which is intrinsically dangerous cannot avoid responsibility in its execution by letting or subletting the work to an independent contractor.

**3. Master and servant ⬤➡332(3)—Whether independent contractor's work was intrinsically dangerous held for jury.**

In an action against a contracting company which had sublet the work to recover damages occasioned by blasting, which killed an employee of plaintiff, and caused property damage, whether the work was intrinsically dangerous *held* for the jury.

**4. Appeal and error ⬤➡695(2)—Trial court not put in error for failure to give affirmative charge when bill of exceptions does not contain all evidence.**

The trial court will not be put in error for failure to give the affirmative charge wherein issue was whether or not work sublet was intrinsically dangerous, where the bill of exceptions does not contain all of the evidence, in that the subcontract introduced in evidence does not appear there.

**5. Trial ⬤➡251(8)—No error in refusing to instruct on eliminated count.**

Wanton count in negligence case being eliminated, refusal to instruct thereon was not error.

**6. Master and servant ⬤➡332(4)—Instructions on negligence of independent contractor doing intrinsically dangerous work held properly refused.**

In action for damages occasioned by blasting, which killed an employee of plaintiff, and caused property damage, wherein the issue was whether or not the work was intrinsically dangerous, the test was not that subcontractor could have done the blasting "in a safe manner," but whether the work to be done was "intrinsically dangerous," and instructions which would relieve defendant of liability, if the work could have been done in a safe manner, were properly refused.

**7. Appeal and error ⬤➡1079—Error in refusal to charge should be urged in argument.**

Refusal of charge and an assignment of error based thereon should be sufficiently urged in argument.

**8. Master and servant ⬤➡332(4)—Instruction on responsibility for acts of independent subcontractor doing intrinsically dangerous work held properly refused.**

Where a contractor letting work to subcontractor knew that it would be necessary to do blasting, and that presence of men would be required to carry on plaintiff's business of mining, court did not err in refusing to charge that plaintiff could not recover damages for resulting injuries, if the contractor did not know that plaintiff maintained a high-tension line and telephone lines on the right of way, where the blasting was to be done.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action by the Alabama Fuel & Iron Company against the Wright-Nave Contracting Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

These requested charges were refused to defendants:

"(14) The court charges you, gentlemen of the jury, that, if you find from the evidence that the high-tension line and telephone line maintained by the plaintiff had not been constructed or put upon the right of way of the Central of Georgia Railway Company at the time the contract in evidence between L. P. Stagg and the defendants was made and entered into, then you cannot find a verdict for the plaintiff under either count 3 or count 4 of the complaint as amended."

"(22) If you find from the evidence that the blasting which is alleged to have caused contact of the wires testified about in this case was done by the employees of L. P. Stagg, and if you find that L. P. Stagg was having this work done as an independent contractor or subcontractor of the Wright-Nave Company, and if you find, further, that said blasting could have been done by said employees of Stagg in a safe manner, then you cannot find a verdict for the plaintiff under count 3 of the complaint in this case."

"(24) If you find from the evidence that the blasting which is alleged to have caused the contact of the wires testified about in this case was done by the employees of L. P. Stagg, and if you find that L. P. Stagg was having this work done as an independent contractor or subcontractor of the Wright-Nave Company, and if you further find that said blasting could have been done by said employees of Stagg in a safe manner, then you cannot find a verdict for the plaintiff in this case."

J. Wiley Logan, of Birmingham, for appellants.

In order to recover, it was necessary for plaintiff to show that the work of blasting being done by the independent contractor was intrinsically or inherently dangerous. Massey v. Oates, 143 Ala. 248, 39 South. 142; Birmingham v. McCary, 84 Ala. 469, 4 South. 630; Montgomery S. Ry. Co. v. Smith, 146 Ala. 316, 39 South. 757. The charge instructing against the recovery of punitive damages

---

should have been given. A. G. S. v. Arnold, 84 Ala. 159, 4 South. 359, 5 Am. St. Rep. 354; C. & W. v. Bradford, 86 Ala. 574, 6 South. 90; L. & N. v. Hall, 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84. The verdict of the jury was contrary to the weight of the evidence, and unjustified. Holcombe v. Reynolds, 200 Ala. 190, 75 South. 938; Mower v. Shannon, 178 Ala. 469, 59 South. 568; Woodroof v. Hall, 157 Ala. 416, 47 South. 570; Davis v. Miller, 109 Ala. 589, 19 South. 699; Sou. Ry. v. Morgan, 171 Ala. 294, 54 South. 626.

Percy, Benners & Burr, of Birmingham, for appellee.

One who has work done which is intrinsically dangerous cannot escape responsibility by letting to an independent contractor. Carland v. Burke, 197 Ala. 435, 73 South. 10. The contract under which defendant sublet the work was introduced in evidence, but it is not set out in the bill of exceptions; the trial court will not be put in error for failure to give the affirmative charge, when the bill of exceptions does not contain all the evidence. Ala. Term. Co. v. Benns, 189 Ala. 590, 66 South. 589. A charge relating to a count that has been withdrawn is abstract. American Ry. Exp. Co. v. Compton, 205 Ala. 298, 87 South. 810; Roach v. Wright, 195 Ala. 333, 70 South. 271.

THOMAS, J. The suit was to recover damages occasioned by blasting that killed an employee of plaintiff, and caused property damage. Plaintiff paid compensation to the dependents of the deceased employee in accordance with the Workmen's Compensation Act. And one phase of the suit is based on subrogation of said dependents' right of action against defendant for said employee's death. Workmen's Compensation Act, Gen. Acts 1919, p. 206, § 32, subd. 2; Georgia Casualty Co. v. Haygood, 210 Ala. 56, 97 South. 87, 91.

The refusal of the trial court to give written charges requested by defendants, and the overruling of their motion for a new trial, are assigned as error.

[1] The affirmative charge should not be given when the evidence is in conflict, or when inferences may be drawn against the party requesting such charge. McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135. Charges 1 to 6 were properly refused.

Plaintiff was a coal mining company. The Central of Georgia Railway Company proposed to construct a line of railroad to reach plaintiff's and other coal mines. Defendants contracted with the said railway company to construct its right of way for the new railroad, and sublet to various contractors portions of that construction work, which was carried on by these subcontractors. At all times defendants had the general supervision thereof, checking the work of the subcontractors, and maintaining that general supervision over the entire construction. The bill of exceptions declares that the contract between defendants and their subcontractor was introduced in evidence. This contract nowhere appears in this record.

It was undisputed that the construction of the right of way necessitated blasting; that when the contract between the defendants and their subcontractor was entered into defendants and that subcontractor knew that in the execution thereof blasting would have to be done; that plaintiff's coal mines and its operations were located and conducted along said right of way; and that the coal mines being opened would be developed during the course of construction of defendants' right of way. Pursuant to permission obtained from the Central of Georgia Railway Company, plaintiff erected a telephone line which crossed said right of way, on the pole of which were placed the telephone wires, and also a high-tension power line of plaintiff. That is to say, the evidence shows that the two lines of wire were on the same pole, but located on different cross-arms or supports; and there was a distance of about 4 feet between said wires, the wires not being directly over each other, but at an offset; and said wires were about 40 feet from the ground. In the course of the construction work the subcontractor was opening or clearing, by blasting, a ditch on the right of way and under plaintiff's said wires. This blasting, done under the telephone wires, had on other occasions blown matter into said wires, and rocks had been thrown so far as the top house, about 125 yards distant. As to this one of the witnesses, without objection, said:

"Shooting had been going on there for a long time, and we had to watch the shots, or we would get our blocks knocked off."

The men doing the blasting were notified by plaintiff on several occasions of the danger of blasting under the wires, and no precautions were taken. On the day of the accident plaintiff's superintendent called the attention of the men so engaged to this danger, and shortly thereafter another shot was fired, throwing matter against the telephone wire and forcing the latter against the high-tension wire. The effect was to charge the telephone wire with the voltage carried on such high-tension wire; the bell on plaintiff's telephone line was caused to ring; and plaintiff's employee (Coley), in the discharge of his duties, in answering the telephone was electrocuted by the high voltage so transmitted to him by the telephone system from the high-tension wire.

There was a tendency of evidence that, when blasting was done in localities where it was necessary to prevent rocks from flying to the damage of adjacent property or per-

sons not so engaged, it was the practice to "muff" the shot by placing other material over the same. Many witnesses were examined, pro and con, as to the effect of "muffing" a shot. The preponderance of the testimony showed it to be the better practice to muff the shots. However, as to this there was conflict. Some of the witnesses said that muffing the shots could be depended on to stop the missiles from flying; others declared that it only reduced the danger, which was impossible to be wholly eradicated; and still others testified that there was more danger from a muffed shot than otherwise, by reason of the fact that the material used to muff the shot was likely to be blown therefrom with a corresponding danger. The shot causing the death and property damage for which this suit is brought was not muffed.

Under this state of facts the trial proceeded on the theory that said blastings were intrinsically or inherently dangerous; that defendants were responsible for the conduct of such operations, even though they had subcontracted the actual conduct and execution of that work; and that a person cannot delegate the doing of an intrinsically or inherently dangerous thing. These facts were set forth in the complaint, to which demurrers were overruled, and no assignment of error challenges such overruling of demurrers. The defense was on the theory that the execution of this part of the subcontract was not intrinsically or inherently dangerous, and might be delegated to the subcontractor without subjecting defendants to damages claimed.

[2] It is settled in this state that one who has work done which is intrinsically dangerous cannot avoid responsibility in its execution by letting or subletting the work to an independent contractor. The case of Carland & Co. v. Burke, 197 Ala. 435, 73 South. 10, is like the case at bar. There the South & North Railroad Company was having a right of way constructed through Cullman, which necessitated blasting operations, and in which plaintiff was injured by one of the blasts. The special plea sought to be interposed was that the railroad was not liable because the work was done by an independent contractor. The lower court and this court held that intrinsically dangerous work (such as blasting) could not be delegated so as to relieve from liability, and that the defendant railroad was responsible for the acts of its independent contractor in doing its work. This rule of law appellants apparently concede. However, they claim that the doctrine is inapplicable because (it is insisted) the work being done when said damage resulted was not intrinsically dangerous. In this trial the court left the question of whether or not the work was intrinsically dangerous to the jury, and its finding and verdict was that the work, as conducted, was intrinsically dangerous. In Mayor, etc., v. McCary, 84 Ala. 469, 472, 4 South. 630, 631, it was said:

"* * * There are two established classes of exceptions to which this general rule has no application. It does not apply: (1) Where the work contracted to be performed will, in its progress, however skillfully done, be necessarily or intrinsically dangerous; and (2) where the law imposes on the employer the duty to keep the subject of the work in a safe condition." Massey v. Oates, 143 Ala. 248, 39 South. 142 (sidewalk paving, where the damage was not incidental to the thing contracted for); Southern Ry. Co. v. Lewis, 165 Ala. 555, 51 South. 746, 138 Am. St. Rep. 77 (damages for flooding land); Baker v. A. B. & A. Ry. Co., 163 Ala. 101, 49 South. 751 (damage to crops in building a railroad).

[3] Appellants contend that they were entitled to the general charge on the alleged ground that the undisputed evidence shows that the work was not intrinsically dangerous. Such contention is not well founded, when the whole evidence is considered.

Appellants rely on the testimony of various witnesses to the effect that the work could have been done with safety if the shot had been muffed. As to this it is sufficient to say that this testimony is merely opinion testimony, and does not conclusively rebut the adverse inference arising from the physical facts and circumstances that may be drawn by the jury. This testimony was in conflict with the tendency of evidence given by plaintiff's witnesses. The effect of the testimony of those witnesses was that the work was inherently dangerous and that its danger could not be wholly removed by the muffing of the shot. Supporting this latter theory or tendency of evidence, defendants' witness Stagg testified:

"I didn't think the rocks would go as high as 50 feet where they were being shot in the ditch. I don't know that pop shots threw rocks way up by the mouth of the mine; I never went to see if any of the shots did that, and I don't know it. I had warned the men to get out of the way of the rocks. I would notify the people to get out the way, but I don't know how far the rocks were thrown. I didn't muff the light shots nor the heavy ones, for there was nobody there. When I left there in August, the work was done except dressing, August, 1921, and there was no more heavy shots necessary. If we had known there was juice on that line we might have muffed the shots. I wouldn't have considered it safe to shoot heavy shots there without muffing them had I known that the line had juice on it, but we wouldn't have muffed the shots like we were shooting had we known of the juice on the line, for there wasn't as much danger in shooting like we were as there would have been if we had muffed them because the muff was liable to have gone up in the air. In holes like those were it would be better not to muff. There are different kinds of muffs. I wouldn't testify that, in shooting like we were, we could have made a muff that would have kept everything from going up into

the wires. * * * In my blasting experience I have known of blasting being done close to where a lot of people were around. I am now using blasting in the streets of Bessemer where people are going by and the closest house is about 80 feet away. I muff these shots with logs, and do not shoot anything into the house; sometimes I shoot some of the muff over there; about all you can do is to take a chance. I am not shooting at that place without putting a muff on the shots, but I would shoot the same charge at this place without a muff on it that I was shooting at the place in question."

There was a like tendency of evidence pointed out by appellee's counsel in the testimony of the witness Wright (defendants' general superintendent or manager) and that of the witness Varner, the agent in charge of said construction.

The fact, or inference that was drawn, was against the defendants. Under the testimony the jury was justified in finding that this work was intrinsically dangerous. In this state of the testimony indicated, the court could not have given the general affirmative charge for the defendants; and the affirmative charges were properly refused. Jones v. Bell, 201 Ala. 336, 77 South. 998; McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135.

[4] Moreover, the subcontract was introduced in evidence, and is not set out in the bill of exceptions or in any part of the record. For aught appearing, that contract may have contained a recognition or admission that the work was intrinsically dangerous in character. Under the rule the trial court will not be put in error for the failure to give the general affirmative charge when the bill of exceptions does not contain all the evidence. Jefferson v. R. I. & S. Co., 208 Ala. 143, 145, 146, 93 South. 890; Ala. Ter. R. R. Co. v. Benns, 189 Ala. 590, 599, 600, 66 South. 589.

[5] The wanton count being eliminated, the refusal to instruct as to such recovery was not error. Amer. Ry. Exp. Co. v. Compton, 205 Ala. 298, 300, 87 South. 810.

[6] Charges 22 and 24, refused to defendants, should not have been given. The test is not that Stagg or his employees could have made the excavations and the blasting could have been done by said employees of defendants "in a safe manner," but whether the work to be done was "intrinsically dangerous"—in all reasonable probability dangerous. Besides, the contract is not in evidence, and the refusal of these charges may be justified by reason of such omission of material evidence. However, the court instructed the jury in the oral charge that the count alleged that the work to be done was intrinsically dangerous, and submitted the issue whether the work to be done was or not "intrinsically dangerous," saying:

"Now, this is a suit not against any employee or servant or agent, but count 3 counts on what is known as an independent contractor, and the count alleges that the work which the independent contractor was doing was intrinsically dangerous, so one of the questions submitted for your consideration is whether or not the work which Staggs' employees were doing at the time of the accident here was intrinsically dangerous. That is a danger—inherent danger—the thing is intrinsically dangerous. This work would have been—this work would not have been intrinsically dangerous if it was reasonably practical to have done the work with safety to property and persons and to the plaintiff's wires. On the other hand, if it—if it—the doing of the work in the proper manner was essentially and inherently dangerous, then it would have been intrinsically dangerous."

[7, 8] Refused charge 14, and the tenth assignment of error based on said ruling, is not sufficiently urged in argument. Johnson v. State, 152 Ala. 93, 44 South. 671; W. U. T. Co. v. Benson, 159 Ala. 254, 48 South. 712; Rep. I. & S. Co. v. Quinton, 194 Ala. 126, 69 South. 604; Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 South. 158. However, the testimony of Mr. Wright shows that at the time he let the subcontract to Stagg the former knew that it would be necessary to do blasting along the right of way to execute the contract, that men would be required "to be working around there" to carry on plaintiff's business of mining. The witness said, "I saw an opening to a mine, and I knew at that time that a mine was going to be built"; that at various times the witness "would go over and look to see if the contractors had forces out there to complete it in time. If the work had not been done in a workmanlike manner I could have done a good deal, and possibly would. I never checked anybody up at all. I never saw anything unworkmanlike on the contract; Stagg didn't do anything unworkmanlike. Other contractors I had did do work in an unworkmanlike manner and I checked them up, and made them do it right, and if I had found anything wrong with Stagg's work I would have made him do it in a workmanlike manner. I saw some of the blasting Stagg did; I didn't know every individual shot, but I saw the conduct of the work. If they hadn't done right, I would have checked them up. At the times I passed along the work was all right. At the time I made the contract with Stagg I knew that it would be necessary for him to do blasting to carry out the contract and that men were apt to be working around there. When I first went down there I saw an opening to a mine, and I knew at that time that a mine was going to be built."

For aught appearing, the contract offered in evidence may have given notice that the power line would be built at this point, and may have directed that, after it was built, shooting under the wires should be done in the manner in which it was done on the occasion when the injury occurred.

No reversible error is presented in the refusal of charge 14.

We have examined the motion for new trial, and grounds thereof urged have been passed upon adversely to defendants, within the rule of Cobb v. Malone, 92 Ala. 630, 9 South. 738, and following the same we cannot say the verdict was contrary to the great weight of the evidence.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.